IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| INDACON, INC. § | |
| § | |
| PLAINTIFF, § | Civil Action No. 5:10-cv-966-OLG |
| § | |
| v. § | |
| § | JURY DEMAND |
| FACEBOOK, INC., § | |
| § | |
| DEFENDANT. § | |

**FACEBOOK, INC.'S MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY FOR INDEFINITENESS OF CLAIMS 1-4 OF
U.S. PATENT NO. 6,834,276 UNDER 35 U.S.C. § 112 ¶ 2**

Defendant Facebook, Inc. ("Facebook") respectfully moves for summary judgment that claims 1-4 of U.S. Patent No. 6,834,276 ("'276 patent")[1] asserted by Plaintiff Indacon, Inc. ("Indacon") are indefinite and therefore invalid under 35 U.S.C. § 112 ¶ 2.

**I.   INTRODUCTION**

The Patent Act requires that patent claims particularly point out and precisely define the metes and bound of the alleged invention in order to inform the public of what is and is not covered by the claims. This requirement is called the "definiteness" requirement. A patent claim that fails to reasonably apprise the public of its scope is invalid for indefiniteness.

The '276 patent is one of two patents asserted by Indacon in this action. Claims 1-4 of that patent violate the Patent Act's definiteness requirement because they recite various "modules" that purport to cover any possible combination of hardware and software capable of performing specified functions. Long-standing Supreme Court precedent and Federal Circuit authority establish that purely functional claims written like the claims in the '276 patent are invalid because they do not particularly point out the scope of the alleged invention.

---

[1] Attached hereto as Exhibit A to the Declaration of Lowell Mead submitted herewith ("Mead Decl.")

1.

Indefiniteness is a purely legal question for the Court to decide that does not depend on any issue of fact. The issue is closely related to claim construction, and Facebook therefore respectfully submits this motion for consideration during the Court's scheduled claim construction proceedings.

## II.   LEGAL STANDARD FOR INDEFINITENESS

The definiteness requirement is codified in Section 112, ¶ 2 of the Patent Act, which states that a patent specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. The purpose of the definiteness requirement "is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citation omitted). The Supreme Court has acknowledged the importance of this requirement:

> The statutory requirement of particularity and distinctness in claims is met only when they clearly distinguish what is claimed from what went before in the art, and clearly circumscribe what is foreclosed from future enterprise. A zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims would discourage invention only a little less than unequivocal foreclosure of the field.

*United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942).

A patent claim is indefinite – and therefore invalid – "if it does not reasonably apprise those skilled in the art of its scope." *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1383-84 (Fed. Cir. 2005) (citation omitted). "Even if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3Dd 1244, 1251 (Fed. Cir. 2008). A wide variety of defective claim language may result in invalidity for indefiniteness. *See id*. at 1249 (discussing various situations in which claims have been ruled "insolubly ambiguous").

Indefiniteness is a question of law for the Court to resolve.  *See Datamize, LLC*, 417 F.3d at 1347 ("A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims.") (citation omitted).  Because indefiniteness is a legal question for the Court, the Federal Circuit has repeatedly confirmed that summary judgment is an appropriate vehicle for resolving indefiniteness issues.  *See, e.g., Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005) (affirming summary judgment of invalidity based on indefiniteness); *Datamize, LLC*, 417 F.3d at 1347-48 (same); *IPXL Holdings*, 430 F.3d at 1383-84 (same); *Halliburton*, 514 F.3d at 1249 (same).  This practice is so common and appropriate that certain district courts have adopted local practices or rules to allow summary judgment motions on indefiniteness to take place alongside claim construction proceedings.[2]

### III.   ARGUMENT

#### A.   "Purely Functional" Apparatus Claims Are Indefinite

The Supreme Court has long held that claims that purport to cover a product or apparatus by using functional claim language that merely describes the purpose or end result of the claim are invalid for indefiniteness.  *See General Electric Co. v. Wabash Appliance Corp.*, 304 U.S. 364 (1938); *United Carbon Co*, 317 U.S. at 234.  In *General Electric*, the Supreme Court invalidated a patent claim relating to a filament for incandescent lamps that did not describe the structure of the claimed filament, but rather, described it by its function or purpose.  The Court found the claim invalid because it "falls within the condemnation of the doctrine that a patentee may not broaden his product claims by describing the product in terms of function."  *General Electric*, 304 U.S. at 371.  The Court observed that "the vice of a functional claim exists not only when a claim is 'wholly' functional, if that is ever true, but also when the inventor is painstaking

---

[2] *See*, *e.g.*, Eastern District of Texas (Tyler Division) model Scheduling/Docket Control Order at 2 (scheduling Motion for Summary Judgment of Indefiniteness briefing alongside claim construction briefing in advance of claim construction hearing) (available at http://www.txed.uscourts.gov/cgi-bin/view_document.cgi?document=19900.)

when he recites what has already been seen, and then uses conveniently functional language at the exact point of novelty." *Id.*

Similarly, in *United Carbon*, the Supreme Court invalidated patent claims covering a black carbon substance because "the claims are but inaccurate suggestions of the functions of the product, and fall afoul of the rule that a patentee may not broaden his claims by describing the product in terms of function." 317 U.S. at 234. The Court rejected the patent owner's assertion that the claims could be saved by reference to the specification, noting that "the description in the specification is itself almost entirely in terms of function." *Id.* at 235-36.

The Federal Circuit confirmed the continued vitality of the rule forbidding purely functional claiming in *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244 (Fed. Cir. 2008). The Federal Circuit in *Halliburton* applied *General Electric* and *United Carbon* to invalidate a claim reciting a "fragile gel" used in drilling operations because the claim recited "what it does rather then what it is." *Id*. at 1255. The court noted that although some functional language in an apparatus claim may be permissible, the claim cannot be drafted such that it is distinguished from the prior art based solely on the function or end result of the invention. *Id.* (quoting *General Electric*, 304 U.S. at 371). Because the claim in that case differentiated the "fragile gel" based entirely on its functional capabilities rather than its structural properties, it was invalid. *Id*. at 1256. Such claims, the court held, impermissibly "purport to cover any and all means so long as they perform the recited functions." *Id.* at 1256 n.7.

These principles serve to prevent the overreaching by a patent owner that is inherent in purely functional claim language. If a patent owner were permitted to obtain a claim, for example, that covered "a vehicle that is capable of travelling at least 100 miles on a gallon of gasoline," such a claim would cover any conceivable mode of transportation that could accomplish that end result – from a hybrid automobile to an advanced space vehicle that the inventor never conceived nor described in the specification. By attempting to distinguish the prior art based purely on a desired end result, rather than the properties of the claimed invention, such claims would grant an illegitimate monopoly and stifle legitimate innovation by others.

This is the precise wrong that the Supreme Court was addressing in *General Electric* and *Union Carbon* when it invalidated claims as indefinite in order to promote and encourage innovation. *See General Electric*, 304 U.S. at 369; *Union Carbon*, 317 U.S. at 236.

### B.     Claims 1-4 of the '276 Patent are Purely Functional and Indefinite

Claims 1-4 of the '276 patent are replete with precisely the type of functional claim limitations that violate *General Electric*, *United Carbon* and *Halliburton*.  Each of these claims recites a "database selection module," a "link module," and a "search module" described entirely by reference to the function those modules are supposed to perform:

- "a database selection module that **enables selection of a plurality of files for inclusion into at least one selectable database**"
- "a link module that **enables custom links to be defined between selected terms of selected files of the at least one database**"
- "a search module that **enables a search of the searchable index to be performed according to a search criterion**"[3]

The specification confirms the purely functional nature of these claim elements by expressly defining the term "module" as "**any combination of hardware and software implemented to achieve the desired functions**."  ('276, col. 11:2-4 (emphasis added).)  By reciting a "module" that "enables" a particular end result, these claim elements are purely functional and cover nothing more than the ability to achieve the recited function.  Indacon has adopted this express functional definition in this litigation by proposing that "database selection module" be construed

---

[3] Claims 1-4 recite additional functions for certain modules: "wherein the link module enables association of any link term with any of the plurality of files in the at least one selectable database" ('276 claim 1); "wherein the link module enables at least one alias term to be defined for the any link term to enable a link to be established between the at least one alias term and the any of the plurality of files" (*id.*); "wherein the link module enables designation of a pattern that corresponds to one or more text strings, and wherein the link module is operable to link instances of the one or more text strings in the selected files with other of said selected files having identification data that matches the text strings" (claim 2); "wherein the link module enables designation of a pattern that includes wildcard characters" (claim 3).

as "any combination of hardware and software implemented to enable a user to select files for inclusion into a selectable database." (Mead Decl. Ex. B.)

The other portions of the specification do not remedy the purely functional description of the claimed "modules." These "modules" are just like the "fragile gel" in *Halliburton*, the filaments in *General Electric*, and the black carbon in *Union Carbon*. The specification describes each of these "modules" as simply an unknown and unspecified structure (akin to a "black box") for performing their respective functions. ('276, col. 10:66-11:2, 11:19-45, 11:54-57.) The specification provides no detail about the actual structure (such as hardware circuitry or software source code) of any of these "modules." During the prosecution of the '276 patent, moreover, Indacon distinguished the prior art based solely on the functions of these "modules," never based on their internal structural detail. (*See*, *e.g.*, Mead Decl. Ex. C (10/25/01 Amendment and Argument) at 5; Ex. D (6/29/01 Amendment and Argument) at 4-5.)[4]

It is hard to imagine a series of claims that more clearly exemplifies "the dangers of using only functional claim limitations to distinguish the claimed invention from the prior art." *Halliburton*, 514 F.3d at 1255. There were scores of different software programming languages in existence prior to the filing of the application for the '276 patent in 1999 for writing computer software,[5] as well as countless hardware designs and configurations (from microchips to computers to campus-sized server farms) that could be used to achieve those functions. (*See*, *e.g.*, '276, col. 8:26-28 ("The invention is also applicable to other microprocessors, other architectures and other operating systems"); 9:8-11; 9:36-7.) *Cf. Aristocrat Techs. Austl. Pty Ltd.*

---

[4] As another notable example in the '276 patent prosecution, Indacon distinguished all of its pending claims, including all of their "module" elements, from the Folio Views reference based on eight different distinctions listed in a chart. (Mead Decl. Ex. E (11/8/02 Amendment and Remarks) at 25.) All eight distinctions were purely functional; none was based on any specific structure for the "module" elements. (*Id.*)

[5] *See*, *e.g.*, "The Language List" website: "Collected Information On About 2500 Computer Languages," with early versions of the list compiled in 1991, available at http://people.ku.edu/~nkinners/LangList/Extras/langlist.htm (Mead Decl. Ex. F); "A Chronology of Influential Computer Languages," noting "over 200 programming languages were developed between 1952 and 1972, available at http://people.ku.edu/~nkinners/LangList/Extras/famous.htm (Mead Decl. Ex. G); "Computer Languages History" document available at http://www.levenez.com/lang/, chronicling more than fifty years of computer language history (Mead Decl. Ex. H).

*v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) ("For a patentee to claim a means for performing a particular function and then to disclose only a general purpose computer as the structure designed to perform that function amounts to pure functional claiming."). Because Indacon's "module" claims effectively purport to cover any conceivable combinations of hardware and software "so long as they perform the recited functions," *Halliburton*, 514 F.3d at 1249 n.7, they are purely functional and therefore invalid.

      C.      **Indacon's Failure to Use "Means-Plus-Function" Format for Claims 1-4 Further Confirms Their Indefiniteness**

In enacting the Patent Act of 1952, Congress adopted a narrow exception to the rule against purely functional apparatus claims by expressly permitting claims to be drafted in what is called "means-plus-function" format. *See* 35 U.S.C. § 112, ¶ 6 ("An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure . . . and such claim shall be construed to cover the corresponding structure . . . described in the specification and equivalents thereof."). Means-plus-function claims under this statute do not violate the rule against purely functional claiming because, unlike the claims in *General Electric* and *United Carbon* – and this case – they do not cover any conceivable structure for performing a particular function. Rather, means-plus-function claims are statutorily limited to cover only the "corresponding structure" set out in the specification that performs the function. *See Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008).

Congress enacted 35 U.S.C. § 112, ¶ 6 as a way for inventors to write claims in functional terms that do not violate the rule against pure functional claiming. *See Aristocrat Techs.*, 521 F.3d at 1333; *Halliburton*, 514 F.3d at 1256 n. 7 ("This statutory provision was meant to preclude the overbreadth inherent in open-ended functional claims, such as those presented in this case which effectively purport to cover any and all means so long as they perform the recited functions."). In other words, "Congress permitted the use of purely functional language in claims, but it limited the breadth of such claim language by restricting its scope to the structure disclosed in the specification and equivalents thereof." *Ex parte Miyazaki*,

7.

89 U.S.P.Q.2d 1207, 1216, No. 2007-3300, 2008 WL 5105055, at *12 (B.P.A.I. Nov. 19, 2008). Computer-implemented means-plus-function claims are even further limited in scope. The Federal Circuit has held that such claims do not broadly cover any computer or processor capable of carrying out the function, but are instead limited to the precise algorithm disclosed in the specification that performs the function. *See Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005); *Finisar Corp.*, 523 F.3d at 1340-41 ("Simply reciting 'software' without providing some detail about the means to accomplish the function is not enough.").

An inventor wishing to avoid the rule against pure functional claiming, therefore, must draft his or her purely functional claims in "means-plus-function" format under 35 U.S.C. § 112, ¶ 6, or the claims are invalid. The Board of Patent Appeals (the internal appeals court within the Patent Office), applying *Halliburton* and Supreme Court precedent, recently confirmed that "any claim that includes purely functional claim language, and which is not subject to the limited construction under 35 U.S.C. § 112, sixth paragraph, fails to meet the requirements of 35 U.S.C. § 112, first paragraph, according to reasoning in *Halliburton* and thus is unpatentable." *Ex parte Miyazaki*, 89 U.S.P.Q.2d at 1217, 2008 WL 5105055, at *13.

Indacon knew about this option and knew how to use it. In particular, Indacon specifically availed itself of 35 U.S.C. § 112, ¶ 6 by drafting claims 5 and 6 of the '276 patent (not asserted in this litigation) that extensively employ "means-plus-function" claim language. As to claims 1-4, however, Indacon did not employ "means for" language and instead sought to circumvent the statute through open-ended "modules" defined solely by their function. Because Indacon did **not** employ means-plus-function format when it drafted claims 1-4, those claims are not subject to the safe harbor under 35 U.S.C. § 112, ¶ 6, and therefore run afoul of the prohibition against pure functional claiming.

### IV.   CONCLUSION.

Claims 1-4 of the '276 patent violate the long-standing rule against purely functional claiming and the careful balance struck by Congress. The Court should grant summary judgment and find claims 1-4 invalid for indefiniteness.

Dated:  June 28, 2011	Respectfully submitted,

By: /s/ Troy A. Glander
Ricardo G. Cedillo
State Bar No. 04043600
Troy A. Glander
State Bar No. 00796634
Mark W. Kiehne
State Bar No. 24032627
**DAVIS, CEDILLO & MENDOZA, INC.**
McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, Texas 78212
Phone: (210) 822-6666
rcedillo@lawdcm.com
tglander@lawdcm.com
mkiehne@lawdcm.com

Heidi L. Keefe (admitted *pro hac vice*)
Mark R. Weinstein (admitted *pro hac vice*)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
Phone: (650) 843-5000
hkeefe@cooley.com
mweinstein@cooley.com
Michael G. Rhodes (admitted *pro hac vice*)
Lowell D. Mead (admitted *pro hac vice*)
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Phone: (415) 693-2000
lmead@cooley.com
jfeasel@cooley.com

**ATTORNEYS FOR DEFENDANT FACEBOOK, INC.**

## **CERTIFICATE OF SERVICE**

I certify that on the 28th day of June, 2011, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system which will send electronic notification to all counsel or record.

/s/ Troy A. Glander
Troy A. Glander
