**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **INDACON, INC.** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **CIV. NO. SA-10-CA-966-OLG** |
| | * | |
| **FACEBOOK, INC.,** | * | |
| | * | |
| **Defendant.** | * | |

**MEMORANDUM AND RECOMMENDATION**

Before the Court is the defendant, Facebook, Inc.'s motion for summary judgment declaring that Claims 1-4 of U.S. Patent No. 6,834,276 asserted by Indacon, Inc. are indefinite and, therefore, invalid under 35 U.S.C. § 112 ¶ 2. (Docket nos. 40 and 51). Indacon has responded. (Docket No. 44). Upon consideration of the motion, response, and applicable law, the Court believes defendant's motion for summary judgement should be **DENIED.** (Docket No. 40).

**I. BACKGROUND**

**A. Factual History**

Indacon is a San Antonio based software development company that formed in 1993 to purchase and further develop a product designed for use by the legal community. The product consisted of a collection of over forty years of Texas cases on CD-ROM interlinked to allow searches for court decisions. As a result of the success of this product, as well as the growth of the Internet,

Indacon went on to develop a product that allowed users to create their own databases of files with the ability to search within those files.

In February of 1999, local Indacon employees, Robert Jensen and Daniel Smith, inventors of this system for data acquisition and perusal, applied for a patent for their invention. On December 21, 2004, U.S. Patent No. 6,834,276 was awarded.[1] On November 16, 2010, a second patent, U.S. Patent No. 7,836,043, with the same specification as the '276 Patent but with different claims, was also issued. Sometime in 2010, the patents were assigned to Indacon and shortly after this assignment, Indacon learned of Facebook's alleged infringements and filed suit.

**B. The '276 Patent**

The '276 patent is entitled "Database System and Method for Data Acquisition and Perusal." It is a data acquisition and perusal system and method for locating, indexing, and accessing information, as well as a data acquisition and perusal system and method for acquiring, creating, manipulating, indexing, and perusing data; the system incorporates three modules: a database selection module, a database index generator module, and a search module. The abstract provides that "[t]he database selection

[1] As patents are typically designated by their last three digits, the Court refers to these patents as the '276 patent and the '043 patent; however, because these patents are interrelated, the Court refers primarily to the specification and claims of the '276 patent.

module enables selection of a plurality of files for inclusion into at least one selectable database"; "[t]he link module enables custom links to be defined between selected terms of selected files of the at least one database"; and "[t]he search module enables a search of the searchable index to be performed according to a search criterion."

**II. APPLICABLE LAW**

A patent claim provides "the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." ***Burke, Inc. v. Bruno Indep. Living Aids, Inc.***, 183 F.3d 1334, 1340 (Fed.Cir.1999). How a claim is construed, including whether a patent claim is indefinite, is a question of law for the court to determine. ***Markman v. Westview Instruments, Inc.***, 52 F.3d 967, 970–71 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

A patent's specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." **35 U.S.C. § 112, ¶ 2 (2000).** This provision, often referred to as the definiteness requirement, ensures public notice of the scope of the patentee's legal protection, so that the public can determine whether or not they are infringing upon the patent. ***Halliburton***

***Energy Servs., Inc. v. M-I, LLC***, 514 F.3d 1244, 1249 (Fed.Cir. 2008). The definiteness inquiry focuses on how a skilled artisan understands the claims; a claim is indefinite if the "accused infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area." ***Id.***, at 1249-50. "If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, ... the claim [is] sufficiently clear to avoid invalidity on indefiniteness grounds." ***Id.*** at 1249(*citing* **Exxon Res. & Eng'g Co. v. United States**, 265 F.3d 1371, 1375 (Fed.Cir.2001). Thus, a claim will be found to be indefinite only if it is "not amenable to construction" or it is "insolubly ambiguous." ***Id.*** at 1250.

A patent shall be presumed valid and, as the party seeking to invalidate a patent, Facebook has the burden of overcoming the presumption of validity by clear and convincing evidence. ***See* 35 U.S.C. § 282; *United States Gypsum Co. v. Nat'l Gypsum Co.***, 74 F.3d 1209, 1212 (Fed.Cir.1996); ***Hibritech Inc. v. Monoclonal Antibodies, Inc.***, 802 F.2d 1367, 1375 (Fed.Cir.1986). Any doubts regarding a patent's invalidity "are properly resolved in favor of the patentee." ***Datamize, LLC v. Plumtree Software, Inc.***, 417 F.3d

1342, 1348 (Fed.Cir.2005); ***Exxon Research & Eng'g Co.***, 265 F.3d at 1380.

## III. ANALYSIS

Facebook moves for summary judgment as to Indacon's Claims 1-4 of the '276 patent based on invalidity for indefiniteness pursuant to 35 U.S.C. § 112 ¶ 2. Claims 1-4 of the '276 patent read:

> 1. A data acquisition and perusal system, comprising:
>
> a database selection module that enables selection of a plurality of files for inclusion into at least one selectable database;
>
> a link module that enables custom links to be defined between selected terms of selected files of the at least one database;
>
> wherein the link module enables association of any link term with any of the plurality of files in the at least one selectable database; and
>
> wherein the link module enables at least one alias term to be defined for the any link term to enable a link to be established between the at least one alias term and the any of the plurality of files;
>
> a database index generator module that enables generation of a searchable index of the data contained in the at least one selectable database, including the custom links, the generator module enabling only valid custom links to be added to the searchable index; and
>
> a search module that enables a search of the searchable index to be performed according to a search criterions.
>
> 2. A data acquisition and perusal system, comprising:

a database selection module that enables selection of a plurality of files for inclusion into at least one selectable database;

a link module that enables custom links to be defined between selected terms of selected files of the at least one database;

wherein the link module enables designation of a pattern that corresponds to one or more text strings, and wherein the link module is operable to link instances of the one or more text strings in the selected files with other of said selected files having identification data that matches the text strings;

a database index generator module that enables generation of a searchable index of the data contained in the at least one selectable database, including the custom links, the generator module enabling only valid custom links to be added to the searchable index; and

a search module that enables a search of the searchable index to be performed according to a search criterion.

3. The data acquisition and perusal system of claim 2, wherein the link module enables designation of a pattern that includes wildcard characters.

4. A data acquisition and perusal system, comprising:

a database selection module that enables selection of a plurality of files for inclusion into at least one selectable database;

a link module that enables custom links to be defined between selected terms of selected files of the at least one database;

the link module enabling association of at least one selected link term with any of the plurality of files in the at least one selectable database;

> at least one selected link term including at least one alias;
>
> a database index generator module that enables generation of a searchable index of the data contained in the at least one selectable database, including the custom links, the generator module enabling only valid custom links to be added to the searchable index;
>
> a search module that enables a search of the searchable index to be performed according to a search criterion;
>
> at least one input device; and
>
> a display utility including a graphic user interface that enables graphic interaction with the database selection, the link and the search modules via the at least one input device, wherein the display utility displays at least portions of files in the selectable database that meet the search criterion, indicates terms in the displayed file portions that meet the search criterion, indicates any of the at least one selected link term in the displayed portions of files in the selectable database that meet the search criterion, enables interaction with any indicated selected link terms via the at least one input device to enable perusal of linked files in the at least one selectable database;
>
> the display utility further indicating the at least one alias; and
>
> the display utility enabling interaction with the at least one alias via the at least one input device to enable perusal of linked files in the at least one selectable database.

**‘276 Patent, cols. 34-36.** Facebook argues that Claims 1-4 are invalid because they employ purely functional language and fail to particularly point out the scope of the alleged invention. More

specifically, Facebook argues that the claim phrases "database selection module", "link module" and "search module" are described entirely by reference to the function those phrases are supposed to perform and that the specification provides no detail about the actual structure.

Citing ***United Carbon Co. v. Binney & Smith Co.***, 317 U.S. 228, 236, 63 S.Ct. 165, 87 L.Ed. 232 (1942) and ***Gen. Elec. Co. v. Wabash Appliance Corp.***, 304 U.S. 364, 369, 58 S.Ct. 899, 82 L.Ed. 1402 (1938), Facebook argues that "[t]he Supreme Court has long held that claims that purport to cover a product or apparatus by using functional claim language that merely describes the purpose or end result of the claim are invalid for indefiniteness." While the Supreme Court identified the dangers of employing functional claim limitations in ***United Carbon Co.***, *supra*, and ***Gen. Elec. Co.***, *supra*, evolving case law has recognized that "'there is nothing intrinsically wrong with using functional language in claims." ***Halliburton Energy Servs., Inc.***, 514 F.3d at 1255 (*citing* ***In re Swinehart***, 58 C.C.P.A. 1027, 439 F.2d 210, 212 (1971)). In fact, following the decisions in ***United Carbon Co.*** and ***Gen. Elec. Co.***, Congress expressly authorized the use of functional language in a means-plus-function format. **35 U.S.C. § 112, ¶ 6 (1952)** (providing that a patentee may express a claim limitation as "a means or step for performing a specified function without the recital of

structure, material, or acts in support thereof"); ***see also TriMed, Inc. v. Stryker Corp.***, 514 F.3d 1256, 1259 (Fed.Cir. 2008) (providing that the use of the term "means" triggers a rebuttable presumption that § 112, ¶ 6 governs claim).

Additionally, functional language may be used to limit the claims without the use of the means-plus-function format. ***Microprocessor Enhancement Corp. v. Texas Instruments Inc.***, 520 F.3d 1367, 1375 (Fed.Cir.2008)(*citing* ***K-2 Corp. v. Salomon S.A.***, 191 F.3d 1356, 1363 (Fed.Cir.1999). Further, where functional language is employed but sufficient structure is not recited, § 112, ¶ 6 may nevertheless apply despite the omission of "means for" language. ***See Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n***, 161 F.3d 696, 703-04 (Fed.Cir.1998); ***see also Lighting World, Inc. v. Birchwood Lighting, Inc.***, 382 F.3d 1354, 1358 (Fed. Cir. 2004)(where claim does not employ the term "means", a presumption exists that § 112, ¶ 6 does not govern claim).

In addressing Facebook's motion, the Court begins by determining whether the claims at issue employ functional language. It appears clear in the present case that they do as evidenced by the following language: "enabl[ing] selection of a plurality of files"; "enabl[ing] custom links to be defined between selected terms"; and "enabl[ing] a search of the searchable index." Further, because the term "means" was not utilized in these claims, it is presumed that § 112, ¶ 6 does not apply; this presumption may

be overcome by a showing that "the claim term fails to 'recite sufficiently definite structure' or else recites a 'function without reciting sufficient structure for performing that function.'" ***Lighting World, Inc.***, 382 F.3d at 1358 (*citing* ***CCS Fitness, Inc. v. Brunswick Corp.***, 288 F.3d 1359, 1369 (Fed.Cir. 2002)). If the presumption is overcome and § 112, ¶ 6 applies, "then we follow the guidelines to claim construction specified in the statute: 'such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.'" ***Watts v. XL Sys., Inc.***, 232 F.3d 877, 881 (Fed.Cir.2000)(*citing* **35 U.S.C. § 112, ¶ 6.** However, if the presumption is not overcome so that § 112, ¶ 6 does not apply, "then our precedent for the construction of limitations that are not means-plus-function limitations is applied in the customary way." ***Id.***

To avoid application of section 112 ¶ 6, a claim term need not denote a specific structure in order to be found to have recited sufficient structure for performing the recited function; "it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function." ***Lighting World, Inc.***, 382 F.3d at 1359-60 (*citing* ***Apex, Inc. v. Raritan Computer,***

***Inc.***, 325 F.3d 1364, 1372 (Fed.Cir.2003); ***CCS Fitness***, 288 F.3d at 1369; ***Watts***, 232 F.3d at 880; *and* ***Personalized Media Commc'ns, LLC***, 161 F.3d at 704).

In the present case, the claims in issue employ the term "module" in a manner that connotes sufficient structure to a person having ordinary skill in the art, notwithstanding the broad class of structures covered by the term. Further, the claim phrase "database selection module" refers to functions of "enabl[ing] selection of a plurality of files ...", "enabl[ing] custom links to be defined between selected terms...", and "enabl[ing] a search of the searchable index..." which would be readily understood by a person having ordinary skill in the art in the context of the invention with minimal structural disclosure.

Moreover, although Facebook argues that Indacon's definition of "module," found in the specification, as representing "any combination of hardware and software implemented to achieve the desired functions" is overly broad and purely functional, a specific structure need not be denoted in order for a claim to be found to have recited sufficient structure for performing the recited function so as to avoid application of section 112 ¶ 6. ***Lighting World, Inc.***, 382 F.3d at 1359-60. In his deposition, Indacon's expert, Dr. Larry Kerschberg, was asked about the following three definitions for the term "module":

1. A collection of circuitry that is designed to perform a

specific operation;
2. A packaged functional hardware unit designed for use with other components;
3. A logically separable part of a [software] program.

**Docket no. 51**, Facebook's Reply, exh. 1, pgs. 64-65. Dr. Kerschberg, a Professor of Computer Science and Co-Director of the Mason Center for Health Information Technology (HIT) in the Volgenau School of Engineering, opined that he "could see a system having a combination of all three definitions." ***Id.*** In fact, the definition set out in the specification appears to incorporate the second and third definitions by providing that "the term 'module' represents any combination of hardware and software implemented to achieve the desired functions." The specification also provides, by way of example, that one or more modules described in the claims "may be incorporated into a database application, which is stored on the storage system and retrieved into the memory system for execution by the CPU." Also, the term "module" is modified in each instance by additional qualifiers such as "database selection," "link" and "search" which provide additional structure and guidance to a person having ordinary skill in the art with respect to the scope of the claims. ***See Apex Inc.***, 325 F.3d 1374 (*citing* ***Personalized Media***, 161 F.3d at 705).

Thus, the term "module" appears to have been used in common parlance or by persons of skill in the pertinent art to designate structure, notwithstanding the fact that the term covers a broad

class of structures and identifies the structures by their function. ***Lighting World, Inc.***, 382 F.3d at 1359-60. Accordingly, the court finds that the presumption that a limitation lacking "means" language is not subject to § 112, ¶ 6 has not been overcome. ***Id.*** at 1358; ***see also Watts***, 232 F.3d at 881.

Having determined that § 112, ¶ 6 does not apply, the Court next considers whether the claims are indefinite. ***Halliburton Energy Servs., Inc.***, 514 F.3d at 1249–50 (definiteness inquiry focuses on how a skilled artisan understands the claims; a claim is indefinite if the "accused infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area").

In a recent case, the Eastern District of Texas addressed the precise issue of whether claims that were not means-plus-00000000000function claims were indefinite because they used purely functional language. ***Eolas Tech., Inc. v. Adobe Sys., Inc.***, No. 6:09-cv-446, 2011 WL 3665342, *1 (E.D. Tex. Aug. 22, 2011). ***Eolas*** involved a patent infringement suit involving Internet browsing software. Defendants initially argued that fifty-three claim elements invoked § 112, ¶ 6 despite the omission of the word "means." ***Id.*** at *13. As in the present case, the court found the claims described sufficient structure and therefore, there was no

basis to apply § 112, ¶ 6. ***Eolas*** at *13. The court went on to consider whether the claims were invalid under the Federal Circuit's holding in ***IPXL Holdings, LLC v. Amazon.com, Inc.***, 430 F.3d 1377, 1384 (Fed.Cir.2005), which provided that claims that were drafted to cover both a system and the method for using the system were invalid because it would be unclear whether infringement occurred when "one creates a system that allows a user to change the predicted transaction information, or when a user actually uses the system." ***Id.*** at *15. The court in ***Eolas*** ultimately found that the claims were not indefinite despite the use of functional language because the functional language employed merely described the capability of the claimed invention without rendering the claims invalid.[2] ***Id.***, at *16-17. The court reasoned that the claims at issue did not require action or "actual use" which is typically required for a limitation to introduce a method step. ***Id.***(*citing* ***Microprocessor Enhancement Corp.***, 520 F.3d at

---

[2] Claim 28 of the '985 patent as cited in ***Eolas*** reads as follows:

> One or more computer readable media encoded with software comprising an executable application for use in a system having at least one client workstation and one network server coupled to a network environment, operable to:
>
> cause the client workstation to display an object and enable an end-user to directly interact with said object while the object is being displayed within a display area created at a first location within a portion of a hypermedia document being displayed in a browser-controlled window ... wherein said client workstation executes said browser application ... wherein the embred text format which corresponds to said first location in the document is identified by the browser ... wherein the type information is utilized by the browsers to identify and locate said executable application, and wherein the executable application is automatically invoked by the browser.

1374-75).

Much like the claims in ***Eolas***, in the present case, Claims 1-4 reflect apparatus claims expressly designating functional limitations that are to be achieved via the implementation of the particular structure. In particular, these claims provide that the data acquisition and perusal system is comprised of "a database selection module that enables selection of a plurality of files for inclusion into at least one selectable database"; "a link module that enables custom links to be defined between selected terms of selected files of the at least one database"; and "a search module that enables a search of the searchable index to be performed according to a search criterions." These claims set forth a particular capability, i.e., the ability to select a plurality of files, of the claimed apparatus, i.e., a database selection module, without requiring action. Thus notwithstanding the use of functional language, Claims 1-4 merely describe the capability of the claimed invention without rendering the claims invalid.

Because the Court finds the meaning of the claims discernable and amenable to construction, and as Facebook has not met its burden of overcoming the presumption of validity by clear and convincing evidence, the Court finds the claims sufficiently clear to avoid invalidity on indefiniteness grounds. ***See* 35 U.S.C. § 282; *United States Gypsum Co.***, 74 F.3d at 1212; ***Hibritech Inc.***, 802 F.2d at 1375.

**RECOMMENDATION**

It is the recommendation of the Magistrate Judge that Facebook's motion for summary judgment be **DENIED.**

**Instructions for Service and**
**Notice of Right to Object**

The District Clerk shall serve a copy of this Memorandum and Recommendation on all parties either electronically or by mailing a copy by certified mail, return receipt requested. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), Fed.R.Civ.P., any party who desires to object to this Memorandum and Recommendation must serve and file specific written objections within 14 days after being served with a copy. ***Such party shall file the objections with the District Clerk and serve the objections on all other parties and the Magistrate Judge.*** A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days after being served with a copy shall bar that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of factual findings and legal conclusions to which the party did not object, which were accepted and adopted by the District Court. ***Thomas v. Arn***, 474 U.S. 140, 150 (1985); ***Douglass v. United Servs. Auto. Ass'n***, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED** December 16, 2011.

JOHN W. PRIMOMO
UNITED STATES MAGISTRATE JUDGE