UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

INDACON, INC.                    *
                                 *
          Plaintiff,             *
                                 *
     v.                          *   CIV. NO. SA-10-CA-966-OLG
                                 *
FACEBOOK, INC.,                  *
                                 *
          Defendant.             *

<u>MEMORANDUM AND RECOMMENDATION</u>

This claim construction opinion constitutes the findings of fact and conclusions of law of the Court on the disputed claim terms in U.S. Patent No. 6,834,276 (the '276 patent), entitled "Database System and Method for Data Acquisition and Perusal" and its continuation, U.S. Patent No. 7,836,043 (the '043 patent).  The parties have submitted briefs in support of their claim construction positions.  (**Docket Nos.** 38, 46, 55 and 41, 43, 52).  Further, on November 2, 2011, a ***Markman*** hearing was held wherein both sides presented oral arguments.  For the reasons stated, the Court adopts the constructions set forth below and summarized in a chart attached as Exhibit A.

<u>I. OVERVIEW OF THE PATENTS</u>

The '276 patent is a system used to obtain and search for information, as well as a method for locating, indexing, and accessing information, and a method for acquiring, creating, manipulating, indexing, and perusing data. The system incorporates four modules: a database selection module, a link module, a

database index generator module, and a search module.  Claim 1 of the '276 patent is representative and reads:

> A data acquisition and perusal system, comprising:
>
> > a database selection module that enables selection of a plurality of files for inclusion into at least one selectable database;
> >
> > a link module that enables custom links to be defined between selected terms of selected files of the at least one database;
> >
> > wherein the link module enables association of any link term with any of the plurality of files in the at least one selectable database; and
> >
> > wherein the link module enables at least one alias term to be defined for the any link term to enable a link to be established between the at least one alias term and the any of the plurality of files;
> >
> > a database index generator module that enables generation of a searchable index of the data contained in the at least one selectable database, including the custom links, the generator module enabling only valid custom links to be added to the searchable index; and
> >
> > a search module that enables a search of the searchable index to be performed according to a search criterions.

**'276 Patent**, col. 34, II, 55-67 & col. 35, I, 1-9.

## II. CLAIM CONSTRUCTION PRINCIPLES

A patent claim provides "the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." ***Burke, Inc. v.***

2

*Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed.Cir.1999). Claim construction is a question of law for the court to determine. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

In construing claims, courts generally consider the following three sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. The specification provides a written description of the invention which allows one of ordinary skill in the art to make and use the invention. *Id.* This description generally explains the invention and may define terms referred to in the claims. *Id.* Lastly, the prosecution history includes the complete record of the proceedings before the U.S. Patent and Trade Office ("PTO"), as well as prior art cited during the examination of the patent. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1317 (Fed.Cir. 2005)(en banc). However, the prosecution history "often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.*

In any event, it is the claims, rather than the specification or the prosecution history, that limit the patentee's invention. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed.Cir. 1985)(en banc). As the court reiterated in *Phillips,* "the claims of a patent define the invention to which the patentee is entitled

the right to exclude." *Id.,* 415 F.3d at 1312 (*quoting* **Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.**, 381 F.3d 1111, 1115 (Fed.Cir.2004)).   Thus, words in a claim are given their ordinary and customary meaning as understood by a person having ordinary skill in the art in question at the time of the invention ("PHOSITA").   *Id.* at 1313.   This ensures that patents, which usually involve inventions by persons skilled in the field of the invention, are addressed to others skilled in the particular art. *Id.*

However, a PHOSITA is "deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."   **Phillips,** 415 F.3d at 1313.   While the claims themselves assist in ascertaining the meaning of particular terms, those terms are part of "a fully integrated written instrument" with the primary basis for construing the claims being the specification.   *Id.* at 1314-17.   Any doubt or ambiguity should be addressed by referring back to the descriptive portions of the specification in order to resolve the doubt and determine the true intent and meaning of the language used in the claims.   **Bates v. Coe**, 98 U.S. 31, 38, 25 L.Ed. 68 (1878).   As the court in **Phillips** recognized,

> [u]ltimately, the interpretation to be given a term can
> only be determined and confirmed with a full
> understanding of what the inventors actually invented and

intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316 (*quoting* **Renishaw PLC v. Marposs Societa' per Azioni**, 158 F.3d 1243, 1250 (Fed.Cir.1998)).

## III. TERMS, PHRASES AND CLAUSES IN DISPUTE

### a. "File"

| INDACON | FACEBOOK |
|---|---|
| Any digital object that contains machine or individual readable or searchable information, **including composite files comprised of multiple elements stored in separate files.** | A document or digital object, **other than a database,** that contains machine or individual readable or searchable information. |

The term "file" is found in Claims 1-4, and 8-11 of the '276 patent and in Claims 19 and 21 of the '043 patent.  Facebook seeks to construe the term "file" so as to exclude databases while Indacon seeks to construe the term "file" so as to include a description of composite files.  In construing this term, the court initially looks to the language of the claims.  **Markman,** 52 F.3d at 979.

Claim 1, cited to in full above, provides for "a database selection module that enables *selection of a plurality of files* for inclusion into *at least one selectable database*."  **'276 patent**, col. 34, II, 55-59 (emphasis added).  A number of other claims also contain similar references to both "files" and "database" within

the same sentence. *See e.g.*, **'276 patent** (Claims 2, 4-6, 8, 9). While at first blush, the use of both terms within the same sentence would appear to support Facebook's construction that a "file" is something other than a "database," the interpretation to be given a term can only be determined with a full understanding of what the inventors actually invented and intended to envelop with the claim. *Phillips*, 415 F.3d at 1316. Any ambiguities are resolved by referring back to the descriptive portions of the specification in order to determine the true intent and meaning of the language used in the claims. *Bates*, 98 U.S. at 38.

The term "file", referred to throughout the claims, is defined in the specification as "encompass[ing] documents and any other digital object that contains machine or individual readable or searchable information." **'276 patent**, col. 9, II, 20-24. The specification also provides examples of file types, including "internet or HTML format (or simply HTM), word processor format including DOC files generated by MS-Word, or similar word processing files generated by WordPerfect®, text format, RTF (Rich Text Format) files, drawing files, *database files*, etc." ***Id.***, col. 10, II, 51-56 (emphasis added). In addition to providing that a database file is a type of file contemplated for use by the patent, the patent also refers to an index as both a "file" and a "database." *Compare* **'276 patent** col. 6, II, 42-46 ("[i]f a file, object or document is modified or deleted, the integrity of the

6

database is not affected with respect to the *other* files, objects, or documents because either the database *(i.e., the index)* will be regenerated, or an error message will be presented telling the user that the file, object, or document has been modified or deleted") ***with '276 patent***, col. 13, I, 32-34("The master word index is best conceived as being a file made up of three parts...").

While the term "database" is also used throughout the claims, it is not defined *per se* in the specification; however, its ordinary and customary meaning as understood by a PHOSITA during the relevant time period is "a collection of information stored in an electronic format." ***See EIT Holdings LLC v. Yelp!, Inc.***, No. C 10-05623-WHA, 2011 WL 5038354, *7 (N.D. Cal. Oct. 24, 2011). Thus, notwithstanding the use of both terms within the same claim, it appears that the inventors intended for "file" to encompass various file types, including a database file, and further, that a PHOSITA would have understood the term "database," meaning "a collection of information stored in electronic format," to encompass "documents and any other digital object that contains machine or individual readable or searchable information." Consequently, specifically excluding "database" from the definition of "file," would not result in a construction "that stays true to the claim language and most naturally aligns with the patent's description of the invention." ***Phillips***, 415 F.3d at 1316.

Indacon also seeks to include a description of composite files

within the construction of the term "file."  The phrase "composite files" is not directly mentioned in the claims; however, the specification lists HTML format files used over the internet as an example of a type of composite file and provides that an "internet or HTML format" file is a type of file contemplated by the patent. Additionally, the specification, describes composite files, providing that: "[c]omposite files *can include* display codes for arrangement, graphics, fonts, hyperlinks, and other characteristics that allow 'assembly' of what appears to be a single document presented on the computer monitor but which actually may be a compilation of multiple text and graphic elements stored in separate files."  **'276 patent**, col. 10, II, 15-23 (emphasis added).

Facebook does not dispute that a composite file is a file, but argues that a single "file" cannot include "composite files comprised of multiple elements stored in separate files." Facebook further complains that Indacon's proposed construction is "confusing" because it uses the word "files" twice within the definition of "file."  The Court finds these arguments unavailing. Here the intrinsic evidence supports the construction that a file may be a composite file, which the specification states can include multiple elements stored in separate files.  This construction is supported by the preferred embodiment of the invention, a web browser designed to facilitate selecting webpages for inclusion into a database.  ***See Adams Respiratory Therapeutics, Inc., v.***

*Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010 (en banc)(excluding the preferred embodiment is "rarely, if ever, correct"). Accordingly, the Court adopts Indacon's proposed claim construction for the term "file."

**b. "Selectable Database"**

| INDACON | FACEBOOK |
|---|---|
| One or more databases comprising files selected by a user | A database **that includes one or more distinct databases selected by the user** containing one or more files selected by the user |

The phrase "selectable database" is found in Claims 1-4 and 8-11 of the '276 patent. While the parties agree that this phrase includes files selected by the user, Facebook argues that a "selectable database" is itself a database that includes one or more distinct databases selected by the user. In support of its position, Facebook cites to the specification which provides:

> The system shown in FIG. 1C includes a database selection module that enables a user to select any number of any type of files from the file database for inclusion into a selectable database. . . . The selectable database comprises one or more databases, shown as D1, D2, D3, etc., where each database includes one or more files selected by the user from the file database. The selectable database may include a single database with a single file or multiple files, or a plurality of databases, each including a single file or multiple files. *The database selection module enables the user to select and define the selectable database.* For example the selectable database may include a database D1 including files of a first type (AF1, AF2, etc.), a database D2 including files of a second type (BF1, BF2, etc.), and so on.

**'276 patent**, col. 10, II & col. 11, I, 1-2, 8-19 (emphasis added).

9

Indacon argues that this single embodiment should not serve to limit the claims but fails to cite to other specific references to "selectable database" in the written description that would otherwise demonstrate the breath of this phrase. *See Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143, 1151-52 (Fed. Cir. 2003)(providing that "broad claims *supported by the written description* should not be limited in their interpretation to a preferred embodiment"). Instead, Indacon maintains that because the invention speaks to a single database with a single file that Facebook's proposed construction entailing a database within a database must be rejected.

Here, the specific claim language provides for "*a database selection module* that enables selection of a plurality of files for inclusion into *at least one selectable database*." **'276 patent**, col. 34, II, 55-58 (emphasis added). Initially, the Court notes that the module itself is referred to as "a database selection module" rather than a file selection module. Also, the claim speaks to inclusion of files into at least one "selectable database" rather than a "database." The use of the adjective "selectable" would appear to be of significance. Other references to "selectable database" within the specification underscore the importance of the use of the word "selectable" and support construing this phrase as something more than one or more random databases. For example, the "Summary of the Invention" provides that: [*t]he database selection*

10

*module* enables *selection of a plurality of files*, objects, or documents for inclusion into at least *one selectable database*" and further, that "[t]he link module enables custom links to be defined between *selected terms* of *selected files* of the *selectable database*." **'276 patent**, col. 5, I, 37-41. The repeated use of the word "selected" and its variant "selectable" in this passage demonstrates that the inventors' use of "selectable databases" throughout the claims was, in fact, deliberate. Were the Court to adopt Indacon's proposed construction that a "selectable database" means nothing more than "one or more databases comprising files selected by a user," the use of the adjective "selectable" would be rendered superfluous.

Further, the construction that "selectable databases" involves a selection of one or more databases by the user is further supported by the following description of the system contained in the specification:

> The system may further include a link module that enables a user to define one or more custom links between selected files of the selected database.  Such links are typically referred to as hypertext links.  For example, the user may choose one or more link terms that should be linked to at least one file, *either in the same database or a different database*, *in the selectable database*.

**'076 patent**, col. 11, I, 19-26 (emphasis added).  Accordingly, the Court rejects Indacon's proposed construction in favor of Facebook's proposed construction for the most part.  To the extent Facebook  seeks to further distinguish databases by injecting the

11

adjective "distinct" in its proposed construction, the Court finds
that distinction unnecessary and further, unsupported; Facebook's
proposed construction is, therefore, adopted as modified.

**c. "Database Selection Module"**

| INDACON | FACEBOOK |
|---|---|
| Any combination of hardware and software implemented to enable a user to select files for inclusion into a selectable database | No construction offered |

The phrase "database selection module" is found in Claims 1-4
of the '276 patent.  In a Memorandum and Recommendation issued
separately, this Court recommended denying Facebook's motion for
summary judgment, rejecting Facebook's contention that this term
was indefinite.  More specifically, the undersigned concluded that
the functional language employed merely described the capability of
the claimed invention, rather than requiring action, and that the
term "module" would be readily understood by a PHOSITA in the
context of the invention with minimal structural disclosure,
notwithstanding the broad class of structures covered by the term.
In light of this recommendation, and given that Facebook has not
offered its own construction of this phrase, the Court adopts the
construction espoused by Indacon.

### d. "For inclusion into at least one selectable database"

| CLAIM LANGUAGE | INDACON | FACEBOOK |
|---|---|---|
| "enables selection of a plurality of files **for inclusion into at least one selectable database**" | Allows the user to choose multiple files to be included into at least one selectable database, **either by copying files into local storage or maintaining a link to files of interest** | Allows the user to choose multiple files to be captured and deposited into a selectable database, **as opposed to accessing and retrieving data from other databases** |
| "selecting a plurality of the located files . . . **for** automatic **inclusion into at least one selectable database**" | Choosing multiple files to be automatically included into at least one selectable database, **either by copying files into local storage or maintaining a link to files of interest** | Choosing multiple files to be automatically captured and deposited into a distinct selectable database, **as opposed to accessing and retrieving data from other databases** |

The clause "enables selection of a plurality of files for inclusion into at least one selectable database" ("enabling clause") is found in Claims 1-4, while the clause "selecting a plurality of the located files . . . for automatic inclusion into at least one selectable database"("selecting clause") is found in Claims 8-11 of the '276 patent. Both the enabling and the selecting clauses require selection of files "for inclusion into at least one selectable database." It is this language that is in dispute.

Indacon argues that "for inclusion of files into at least one selectable database" can entail either "copying files into local

storage or maintaining a link to files of interest." In support of its position, Indacon sites to the following statements contained in the specification:

> The data acquisition and perusal system and method may be configured to copy internet files to a local storage disk, or to simply maintain a link to the internet files of interest.[1]

> Files may be copied into local storage or may be simply accessed via an existing link to that file.[2]

> If the documents of the database index are located remotely, e.g., on the World Wide Web (WWW) of the internet, the source file location edit box contains a hypertext transfer protocol address, i.e., an 'http' (HyperText Translation Protocol) address to the location. Of course, other types of addresses/designations are available for remotely accessible files, and these various types of addresses/designations are entered into the source file location edit box in a similar manner.[3]

Notwithstanding this language, Facebook contends that Indacon distinguished its claims from prior art references by arguing its claim language requires that the files chosen by the user be captured and deposited into a selectable database; therefore, Indacon can not now argue that "for inclusion into the at least one selectable database" involves accessing and retrieving those files from other databases. In support of its position, Facebook cites to the following prosecution history:

> But independent claims 20, 52, and 74 are not merely limited to 'selecting files.' Rather, those claims

---

[1] '276 patent, col. 5, II, 58-61.

[2] '276 patent, col. 10, II, 60-65.

[3] '276 patent, col. 26, II, 34-46.

recite selecting files *for* inclusion into a selected or selectable database.  Hobbs does not teach selecting files for inclusion into a database.  Hobbs simply does not create a database at all.  **It merely accesses and retrieves articles from other databases.**[4]

Rad and Wang and Rada are interested in converting and composing individual documents into hypertext format.  These references are not directed to **capturing a plurality of existing files, depositing them into a selectable database,** and then generating a searchable index for the entire database.[5]

It is well settled that in order to disavow claim scope during prosecution "a patent applicant must clearly and unambiguously express surrender of subject matter." *Voda v. Cordis Corp.*, 536 F.3d 1311, 1321 (Fed.Cir.2008)(*citing* *Sorensen v. Int'l Trade Comm'n*, 427 F.3d 1375, 1378-79 (Fed.Cir.2005)); *see also Omega Eng'g, Inc., v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed.Cir.2003) ("[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable.").

In the present case, although Facebook highlights language in Hobbs regarding "merely access[ing] and retriev[ing] articles from other databases," the prosecution history cited to above emphasized the language referring to selecting files "*for inclusion*" into a selected or selectable database.  Indeed, the prosecution history cited to reflects that Hobbs was a system that accessed pre-

---

[4] **Docket No. 41**, Facebook's Opening Claim Construction Brief, Ex. 9 (10/25/01 Amendment and Argument) at 5 (emphasis added).

[5] *Id.*, Ex. 11 (04/23/02 Amendment and Argument) at 6 (emphasis added).

existing databases rather than a system that accessed information for inclusion into a database selected by the user. Thus, the 'disclaimer' that Hobbs's "does not create a database at all" . . . "[i]t merely accesses and retrieves articles from other databases" does not amount to a "clear and unambiguous express surrender" of any claim that the patent-in-suit encompasses files selected for inclusion into at least one selectable database by accessing and retrieving data from other databases. *Voda*, 536 F.3d at 1321. Further, it appears, both from the language in the specification, as well as the use of the adverb "merely" in the prosecution history, that unlike Hobbs, which neither created a database nor selected files for inclusion into this database but "*merely* access[ed] and retriev[ed] articles from *other* databases," the patent-in-suit allows for creation of a database and for selection of files *for inclusion both* by copying files to a local storage disk, *as well as* by accessing and retrieving data from other databases by maintaining a link to the internet files of interest.

Similarly, the distinction that Rad and Wang and Rada "are not directed to capturing a plurality of existing files, [and] depositing them into a selectable database" does not clearly and unambiguously disavow any claim with respect to the patent-in-suit that files may be included into a selectable database by accessing and retrieving data from other databases. *Voda*, 536 F.3d at 1321.

The original reference emphasized that Rad and Wang and Rada "are interested in converting and composing *individual* documents into hypertext format" as opposed to being "directed to capturing a plurality of existing files, depositing them into a selectable database, and then generating a searchable index for the entire database."  This emphasis on the word "individual" appears to reflect the inventors' intent to distinguish the prior reference based on its interest in converting and composing "individual documents" as opposed to a "plurality of existing files," as well as its failure to disclose a database and a database index generator module.  Because the Court is unpersuaded that Indacon disclaimed the subject matter alleged by Facebook from the scope of its patent, the Court adopts the construction proposed by Indacon with respect to both the "enabling" and the "selecting" clauses. ***Voda***, 536 F.3d at 1321.

**e. "term" and "alias"**

| CLAIM TERM | INDACON | FACEBOOK |
|---|---|---|
| "term" | **Textual or graphical** object | **Textual expression**, such as a word |
| "alias" | **Textual or graphical** hyper link that the user can define to serve as an alternative name or label | **Textual expression** that the user can define to serve as an alternative name or label |

"Term" is found in Claims 1-4 and 8-11 of the '276 patent and in Claims 19 and 21 of the '043 patent.  The term "alias" is found

in Claims 1, 4, 8 and 11 of the '276 patent.  The central dispute here is whether "term" and "alias" should be construed to include a graphical object or hyper link or whether their meaning should be limited to textual expression only.  Mindful that the interpretation to be given any term can only be determined with a full understanding of what the inventors actually invented and intended to envelop with the claim, the Court turns to the claims, as well as the descriptive portions of the specification. *Phillips*, 415 F.3d at 1316; *see also Bates*, 98 U.S. at 38.

Claim 1 provides for a data acquisition and perusal system, comprising a database selection module and a link module:  "wherein the link module enables association of any *link term* with any of the plurality of files in the at least one selectable database"; and "wherein the link module enables at least one *alias term* to be defined for the *any link term* to enable a link to be established between the at least one alias term and the any of the plurality of files."  **'276 patent**, col. 34, II, 55-67.  Similar references to "term" and "alias" are found throughout the claims.  "[T]erm" is defined in the specification as follows:

> The user makes an inquiry about specific words or phrases by entering those specific words or phrases via the search module.  The search module first parses the inquiry into a list of its *discrete terms*, *i.e., words, numbers, spaces, etc.* , and then accesses the database index to locate the terms in various files/documents of selected databases.

**'276 patent**, col. 12, II, 51-57 (emphasis added).  However, as

Facebook readily admits, "term" is modified throughout the claims by any one of the following words: search, chosen, alias, and link. Importantly, the patent provides that "[a]nother object of the invention is to provide a method and system for storing search results from various sources including the internet with internet format files, *objects*, or documents. The locally stored results can be automatically indexed for fast searching and *hyper linked* by the user." **'276 patent**, col. 5, I, 19-25 (emphasis added). And while Facebook argues that the phrase "hypertext link" is not being construed here, the specification explains that:

> The system may further include a link module that enables a user to define one or more custom links between selected files of the selected database. *Such links are typically referred to as hypertext links.* For example, the user may choose one or more *link terms* that should be linked to at least one file, either in the same database or a different database, in the selectable database. The link module allows an essentially unlimited number of such *link term/file* pairs to be created. As further described below, when a *link term* is encountered in a file or document, the *link term* is indicated or otherwise highlighted so that the user can select the indicated *link term* to jump to the *link file*.

*Id.,* col. 11, I, 19-32 (emphasis added).

This language suggests that the inventors intended to envelop storing objects, such as graphics, and further, contemplated automatically indexing and hyper linking these objects for fast searching. Further, the prosecution history supports Indacon's construction that "link terms" and/or "hypertext links" were commonly understood to include graphics. In particular, Hobbs,

19

filed on June 9, 1997, states:

> Specifically, the present invention concerns a multi-tier client/server model for record retrieval wherein optimum record retrieval from a database is achieved based on embedded expert judgments linked to words, phrases, sentences and paragraphs of text; or numbers; or maps, charts and tables (including spread sheet); or **still pictures and/or graphics**; or moving pictures and/or graphics; or audio elements (*hereinafter sometimes collectively referred to as the "links or **Linked Terms**,"* or when any one of the aforementioned elements are used singly, as the *"link" or **Linked Term"*), contained in documents on a network resource, such as a web site*...

**Docket no. 46**, exh. H, Patent No. 5,987,454, col. 1, II, 13-24 (referred to as "Hobbs")(emphasis added). Although Facebook argues that in Hobbs, the patentee acted as his own lexicographer for "links" and "linked terms," Indacon cites to two additional references supporting its position that a PHOSITA would also have understood "hypertext links," which the specification refers to as the more commonly referred to name for link terms that have been defined, to be commonly understood to include graphics.

In particular, Indacon argues that the PTO considered both De La Huerga and Borman in granting the '276 patent. **'076**, pg.1, References Cited. De La Huerga, filed on Oct. 9, 1996, states that "[s]tored on database/servers on the Internet are thousands of data records which contain references to still other data records in the form of *textual or graphic "hypertext links.*" **Docket no. 46**, exh. F, Patent No. 5,895,461, col. 2, II, 54-56 (referred to as "De La Huerga" after one of the inventors)(emphasis added). Similarly,

Borman, filed on Oct. 8, 1996, refers to "*[a] hot-link* display[ing] at the user level as *text or graphic* and is processed for communication purposes as an URL." **Id.**, exh. G, Patent No. 5,890,172, col. 2, II, 40-41(referred to as "Borman" after one of the inventors)(emphasis added).

Based on these prior references, it appears that a PHOSITA would have understood "link term" to include a textual or graphical object on February 25, 1999, the date the current patent was filed. **Phillips,** 415 F.3d at 1312. Because construing "term" solely as textual expression fails to take into account the true intent and meaning of the language used in the claims as reflected by the intrinsic evidence, the Court adopts the interpretation proposed by Indacon. **Bates**, 98 U.S. at 38.

Consistent with its arguments regarding "term," Facebook also contends that an "alias", which is created for any link term, refers only to textual expression. For essentially the reasons set forth above, the Court is not persuaded that the term "alias" should be construed to mean textual expressions only. Therefore, the Court adopts Indacon's proposed constructions for the term "alias" as well.

f. **"custom link"**, **"custom linking relationship"** and **"link term"**

| CLAIM LANGUAGE | INDACON | FACEBOOK |
|---|---|---|
| "custom link" | A link the user can define using a chosen term that allows **instances** of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user | A link the user can define using a chosen term that allows **each instance** of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, **without modifying the files** |
| "custom linking relationship" | A linking relationship the user can define using a chosen term that allows **instances** of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user | A linking relationship the user can define using a chosen term that allows **each instance** of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, **without modifying the files** |
| **CLAIM LANGUAGE** | **INDACON** | **FACEBOOK** |
| "link term" | A term chosen by a user than can be displayed as a link to a file specified by the user in the plurality of files | A term chosen by a user that can be displayed as a link to a file specified by the user **whenever the user encounters the term** in the plurality of files |

The phrase "custom link" is found in Claims 1-4 of the '276 patent; "custom linking relationship" is found in Claims 8-11 of the '276 patent; and "link term" is found in Claims 19 and 21 of the '043 patent. The parties' initial dispute with respect to

these terms pertains to whether custom links <u>allow</u> *each instance*-
as opposed *to instances*- in which the specified link term is
encountered to be identified and displayed to the user as a link,
and whether these custom links modify the files.

Claims 19 thru 22 of the '043 patent provide:

19. A method of annotating, indexing, searching and
    displaying a plurality of selected source files,
    the method comprising:

    enabling users to generate custom annotations of
    the plurality of selected source files;

    wherein the enablement step also enables a user to
    designate a *link term* and designate one of the
    plurality of selected source files to be linked to
    the designated *link term*;

    generating a searchable index of the plurality of
    selected source files;

    incorporating any user-generated custom annotations
    into the index;

    searching the searchable index according to a
    search criterion to locate words and phrases in the
    plurality of selected source files;

    and displaying at least portions of files in the
    plurality of selected source files that meet the
    search criterion.

20. The method of claim 19, wherein the step of
    generating a searchable index creates a searchable
    index comprising a plurality of complementary index
    files.

21. The method of claim 19, further comprising the step
    of verifying the validity of any designated links,
    wherein the incorporating step incorporates links
    only if the links are valid.

22. The method of claim 19, *further comprising* the step
    of automatically generating links between *all*

> *instances* of a designated link term within the
> plurality of selected source files and the
> designated file.

**'043 patent**, col.36, II, 43-67 & col. 37, I, 1-4.

Here Claim 19 "enables a user to designate a *link term* and designate one of the plurality of selected source files to be linked to the designated link term" while Claim 22, further provides "the step of automatically generating links between *all instances* of a designated link term within the plurality of selected source files and the designated file." Indacon argues that the distinction between these two claims suggests that "the asserted claims do not require all instances of custom links to be displayed or to be capable of being displayed as a link." However, as Facebook duly notes, if all instances of custom links were not capable of being displayed, Claim 22, which encompasses the method of Claim 19, and *further comprises* "the step of automatically generating links between *all instances* of a designated link term ...," could not be effectuated. ***See Genentech, Inc. v. Chiron Corp.***, 112 F.3d 495, 501 (Fed. 1997) ("comprising" is a term of art which allows for the addition of other elements as long as the named elements, which are essential, are included).

Further, the specification supports the construction that the inventors intended that a custom link allow each instance of the term to be identified and displayed as a link, providing that:

The system may further include a link module that enables

24

> a user to define one or more custom links between
> selected files of the selected database.  Such links are
> typically referred to as hypertext links.  For example,
> the user may choose one or more link terms that should be
> linked to at least one file, either in the same database
> or a different database, in the selectable database.  The
> link module allows an essentially unlimited number of
> such link term/file pairs to be created.  As further
> described below, *when a link term is encountered in a*
> *file or document, the link term is indicated or otherwise*
> *highlighted so that the user can select the indicated*
> *link term to jump to the linked file.*

**'276 patent**, col. 11, I, 19-32 (emphasis added).  While Indacon now

maintains that "[w]hether "all instances," "multiple instances," or

"some instances" of the particular link term in the files appears

as a hyperlink depends on the specific claim, in its opening brief,

Indacon made no such distinction, stating instead that:

> The system allows a user to define 'Mack Brown' as a
> custom link and select a target file in the database that
> provides a biography of Mack Brown.  *Thereafter*, when the
> term 'Mack Brown' is used in the files, it *can be* linked
> to Mack Brown's biography.  *One advantage of the claimed*
> *custom linking system is that a user need only define a*
> *custom link once* so that, when 'Mack Brown' is used
> elsewhere in the database, the name can be made into a
> hyperlink without the user defining the biography file as
> the target again.

**Docket no. 38**, Indacon's Opening Claim Construction Brief, pgs. 3-4

(emphasis added).  The language "*[t]hereafter*, when the term 'Mack

Brown' is used in the files, it *can be* linked to Mack Brown's

biography" would appear to indicate that once a term has been

defined as a link to a file specified by the user, *any subsequent*

reference to the term used in the files can be- but is not required

to be- identified and displayed as a link.   In light of the

25

instrinsic evidence, as well as plaintiff's representation, the Court adopts Facebook's proposed constructions with respect to the dispute concerning each instance/instances.

Facebook's proposed constructions also include language providing that the custom links do not modify the files. In support of its position, Facebook cites to the Summary of the Invention, which provides:

> The system and method may automatically, unambiguously, and accurately place reference links among documents within a database it creates according to a scheme controlled by the user. These links enable the user to instantly view a file, object, or document referenced by another file, object, or document currently being viewed and to backtrack to any point of origin in the database. *The system and method does not modify or make extraneous copies of the contents of the original database files,* objects, or documents.

**'276 patent**, col. 6, ll, 32-41. Further, Facebook cites to the prosecution history which refers to "original source files," providing that: "in the preferred embodiment of Applicant's invention, *the original source files are not edited or modified to incorporate the custom links*." **Docket no. 41**, exh. 16 (07/07/03 Amendment and Remarks) at 34. The history goes on to state "[r]ather, Applicant's data acquisition and perusal system stores the links- actually, the link definitions or specifications - in its searchable index. In a sense, Applicant's system creates 'virtual' custom links for the original source files. The custom links are not inserted into the original source files themselves."

*Id.*

Indacon maintain that the files can, in fact, be modified once they have been added to the database, and further, that nothing precludes adding custom links to these files.  In support of its position, Indacon cites to the specification which provides that "[i]f a file, object, or document is modified or deleted, the integrity of the database is not affected with respect to the other files, objects, or documents because either the database (i.e., the index) will be regenerated, or an error message will be presented telling the user that the file, object, or document has been modified or deleted."  *Id.*, col. 6, II, 41-48.  Additionally, the abstract provides that "[t]he data acquisition and perusal system and method may also allow users to view, acquire, and generate single- or multiple- data sources locally or remotely, and allow users to compile, index, *modify*, and append the data sources according to default or user defined criteria."  *Id.*, col. 2, II, abstract.

Thus, clearly some modification of files is contemplated by the patent.   Further, it appears that the specification distinguishes between "original" database files, the contents of which are not modified by the system, and "data sources" which users may *modify*, and append according to default or user defined criteria.  Although Facebook argues that during the prosecution history Indacon disavowed that the claims covered a system in which

27

custom links modified the underlying source files, the prosecution history cited to relies entirely on the preferred embodiment. *See Prima Tex II, L.L.C.*, 318 F.3d at 1151-52 (broad claims supported by the written description should not be limited to a preferred embodiment). Further, other than the limitation that "the contents of the original database files, objects or documents are not modified," none of the references cited to specifically preclude files from being modified or custom links from being added to files.

However, Facebook's proposed construction makes no distinction between "original database files" and "files," proposing only that custom links are added to the plurality of files "without modifying the files." Accordingly, the court adopts Facebook's proposed construction with the following modification to remedy this omission:

> A 'custom link' is 'a link the user can define using a chosen term that allows each instance of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, without modifying the original database files.'

> A 'custom linking relationship' is 'a linking relationship the user can define using a chosen term that allows each instance of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, without modifying the original database files.

Facebook's proposed construct for the phrase "link term" is adopted in full.

**g. "custom annotations" and "incorporating any user generated custom annotations into the index"**

| CLAIM LANGUAGE | INDACON | FACEBOOK |
|---|---|---|
| "custom annotations" | Notes specified by the users | Notes specified by users **that do not modify any of the selected files** |
| CLAIM LANGUAGE | INDACON | FACEBOOK |
| "incorporating any user generated custom annotations into the index" | If users have generated custom annotations, incorporating those annotations into the index | If users have generated custom annotations, incorporating those annotations into the index **without modifying any of the selected files** |

The phrase "custom annotations" is found in Claims 19 and 21 of the '043 patent; it refers to a customized note created by the user for an underlying file or document.  The clause "incorporating any user generated custom annotations into the index" is also found in Claims 19 and 21 of the '043 patent.  As with custom links, Facebook contends that "custom annotations" and "incorporating any user generated custom annotations into the index" should include language reflecting that the custom annotations "do not modify any of the selected files."

In support of its position, Facebook cites again to the "Summary of the Invention" which provides that "[t]he system and method does not modify or make extraneous copies of the contents of the original database files, objects, or documents." **'276 patent**, col. 6, II, 38-41.  Moreover, Facebook argues that Indacon's prosecution history clearly disclaims any modification of the

selected files.  In support thereof, Facebook states that Indacon alleged that a "distinguishing aspect of the invention" was storing annotations and custom links to an index rather than adding them to the underlying files.  **Docket no.** 41, exh. 31 (04-15-09 Appeal Brief) at 11-12.  Additionally, Facebook cites to the following prosecution history:

> The Examiner continues to cite ... van Hoff as 'referring to annotated documents being indexed and stored.' . . . This passage discusses adding annotations to a document, not adding annotations to an index.[6]

> [N]either Egger nor van Hoff, individually or in combination, anywhere teach or suggest storing the user-generated annotations in the searchable index, as opposed to simply storing the annotations within the annotated files themselves.[7]

Indacon maintains that nothing in the claims, the specification, or the prosecution history precludes custom annotations from being added to the files.  Further, Indacon disputes that the prosecution history contains a clear and unambiguous disclaimer that "custom annotations" can not be added to files and argues, instead, that the inventors distinguished the prior art from the claims on the basis that the prior art did not disclose adding annotations to a "searchable index."

The Court agrees that the prosecution history cited does not reflect that Indacon clearly and unambiguously expressed surrender

---

[6]**Docket no. 41**, exh. 31 (04/15/09 Appeal Brief) at 33.

[7]*Id.*

of any claim that custom annotations could not be added to files. *Voda*, 536 F.3d at 1321; *see also Omega Eng'g, Inc.*, 334 F.3d at 1325-26. Further, it appears that the patent contemplated some modification of files as evidenced by the specification. Nevertheless, the patent clearly provides that the system does not modify "the contents of the original database files, objects or documents." Therefore, the Court adopts Facebook's proposed constructions as modified to reflect that "custom annotations" and "incorporating any user generated custom annotations into the index" do not involve modifying "the contents of the original database files."

**h. "Display/displaying" and "accurately highlighting the located terms and phrases"**

| CLAIM LANGUAGE | INDACON | FACEBOOK |
|---|---|---|
| display/ displaying | No construction necessary | To visually present to a computer user. Merely delivering information to a computer is not displaying information. |
| "accurately highlighting the located terms and phrases" | No construction necessary | Visually presenting to the user the located terms and phrases so they are visually distinguished from surrounding text appearing on the screen. |

The term "display," and its derivative "displaying," is found in Claims 4 and 11 of the '276 patent and in Claims 19 and 21 of the '043 patent.   Claim 4 is representative and provides for a

data acquisition and perusal system comprising:

a database selection module that enables selection of a plurality of files for inclusion into at least one selectable database;

a link module that enables custom links to be defined between selected terms of selected files of the at least one database;

the link module enabling association of at least one selected link term with any of the plurality of files in the at least one selectable database;

at least one selected link term including at least one alias;

a database index generator module that enables generation of a searchable index of the data contained in the at least one selectable database, including the custom links, the generator module enabling only valid custom links to be added to the searchable index;

a search module that enables a search of the searchable index to be performed according to a search criterion;

at least one input device; and

a *display* utility including a graphic user interface that enables graphic interaction with the database selection, the link and the search modules via the at least one input device, wherein the *display* utility *displays* at least portions of files in the selectable database that meet the search criterion, indicates terms in the *displayed* file portions that meet the search criterion, indicates any of the at least one selected link term in the *displayed* portions of files in the selectable database that meet the search criterion, enables interaction with any indicated selected link terms via the at least one input device to enable perusal of linked files in the at least one selectable database;

the *display* utility further indicating the at least one alias; and

the *display* utility enabling interaction with the at least one alias via the at least one input device to enable perusal of linked files in the at least one

32

selectable database.

**'276 patent**, col. 35, I, 34-67 & col. 36, II, 1-7 (emphasis added).

Indacon maintains that "display" is a commonly understood term that requires no construction. However, Indacon maintains that the ordinary meaning of this term does not require an actual visual display. In support thereof, Indacon cites only to the following passage contained in the specification: "[o]f note, the search module must still perform more tasks before displaying the documents that fit the search conditions, and these tasks are not necessarily related to any specific search." **'276 patent**, col 18, II, 64-67. Facebook also maintains that "display" is a commonly understood term but maintains that its ordinary meaning in the computer context is "to visually present information to the user." Further, Facebook's proposed construction of this term emphasizes this limitation by the inclusion of the following language: "[m]erely delivering information to a computer is not displaying information." Moreover, Facebook asserts that Indacon disclaimed that an Internet service merely delivering information to a computer was sufficient to display that information to a user as reflected by the prosecution history which provides:

> Burrows's system is concerned with networking Internet users with webpages containing useful information. . . . As such Burrows is concerned with providing web surfers with a fast up-to-date search engine. . . . *Delivering information and displaying information are two different functions.* Presumably, the presentation module 58 does what other search engines do- it delivers a stream of text or information. To *display* the information,

presumably *an independent application, such as a web browser, is required*. . . . Burrows, after all, teaches an improved search engine index. *It is not concerned with displays. To display the searched words on a live HTML page, Burrows would have to be used in conjunction with some kind of a browser that received one input from the Burrows search engine* - namely, the search terms used to generate the search list - and, then, a few clicks later, another input - namely the linked web page - and that was intelligent enough to locate and highlight the words inputted a few clicks and web page entries ago on the currently displayed web page.

**Docket No. 41**, Ex. 16 (07/07/03 Amendment and Remarks) at 3-41 (emphasis added).

Indacon offers no construction for these terms, arguing only that "[t]here is no basis for giving the commonly-understood terms 'display' and 'displaying' a special meaning." The Court agrees that the term "display" is one that is commonly understood; however, the Court disagrees with any suggestion that these terms are commonly understood to mean "sending documents to a user's terminal" rather than visually presenting information to a computer user. *Phillips*, 415 F.3d at 1312-13 (*quoting* ***Vitronics Corp. v. Conceptronic, Inc.***, 90 F.3d 1576, 1582 (Fed. Cir. 1996)("the words of a claim 'are generally given their ordinary and customary meaning,'" which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application"). Here, the claim language "wherein the *display* utility *displays* at least portions of files in the selectable

database that meet the search criterion," arguably requires more than transmitting documents to a user's terminal. Other references to "display" and "displaying" within the claims likewise appear to require an actual visual display rather than the mere process of sending information. Further, although Indacon argues that the specification provides that the search module "displays" documents, the specification does not purport to define "display" in a unique manner so as to include the transmitting of information. Instead, the passage cited to by Indacon is more logically interpreted to mean that the search module must still perform more tasks before the display/input utility displays the documents. This construction is supported by the prosecution history which reflects Indacon's recognition that "[d]elivering information and displaying information are two different functions" with "display[ing] information" requiring "an independent application, such as a web browser." Accordingly, the Court adopts the construction proposed by Facebook with respect to the terms "display" and "displaying."

The parties also disagree as to the meaning of the clause "accurately highlighting the located terms and phrases," which is found in Claims 8-11 of the '276 patent. As with the term "display," Indacon maintains that "highlighting" is a term that is commonly understood and therefore, requires no construction. Facebook too maintains that the term's ordinary meaning should be applied but argues that "highlighting" is "a specialized way of

displaying information on a screen that allows the user to visually distinguish the 'highlighted' information from surrounding information."

Claim 8, which is representative, contains the clause at issue, and provides for a data acquisition and perusal method for finding, storing and retrieving useful information, comprising the steps of:

> locating a plurality of accessible files according to a selected search criteria;
>
> selecting a plurality of the located files containing relevant information for automatic inclusion into at least one selectable database;
>
> defining custom linking relationships between selected terms and designated files of the selected database;
>
> wherein said link definition step includes defining at least one alias term for at least one of the selected terms to establish linking relationships between the at least one alias term and one of the designed files;
>
> verifying the validity of the custom linking relationships;
>
> generating a searching index of the data contained in the selected database including the custom linking relationships so that the searchable index includes only valid custom linking relationships; and
>
> searching the searchable index according to a selected search criterion to locate words and phrases in the data and *accurately highlighting the located terms and phrases*.

**'276 patent**, col. 36, II, 63-67 & col. 37, I, 1-18 (emphasis added). The specification explains that "[t]he portion of a displayed file typically includes any text that meets the search

36

criteria.  Such text is usually graphically indicated, such as via color, style, highlighting, etc." *Id.*, col. 6, II, 20-23. Additionally, the specification provides the following by way of example: "[a] field link is illustrated in the text in FIG. 9, in which the underlying text is shown highlighted with selectable color and font different from the surrounding text to indicate the link, where the highlight selections are made in a Search Terms display control 1101 (FIG. 10)." *Id.*, col. 28, II, 31-35. Finally, the prosecution history supports this same construction as reflected by the following:

> *[H]ighlighting the matching search terms on the currently viewed portion of an HTML page* is a non-trivial task. ... Furthermore, it is not obvious how to modify Burrows to accomplish that result.  Burrows, after all, teaches an improved search engine index.  *It is not concerned with displays.  To display the searched words on a live HTML page, Burrows would have to be used in conjunction with some kind of a browser that received one input from the Burrows search engine* - namely, the search terms used to generate the search list - and, then, a few clicks later, another input - namely the linked web page - *and that was intelligent enough to locate and highlight the words* inputted a few clicks and web page entries ago on *the currently displayed web page.*

**Docket no.** 41, Ex. 16 (07/07/03 Amendment and Remarks) at 41 (emphasis added).

Because the intrinsic evidence reflects that the ordinary meaning of the clause "accurately highlighting the located terms and phrases" requires a visual presentation, the Court adopts Facebook's proposed construction.

## RECOMMENDATION

It is, therefore, the recommendation of the Magistrate Judge that the disputed claims of the parties be construed in accordance with Exhibit A, attached hereto.  Should the District Court accept this recommendation, the parties are further ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual constructions adopted by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the constructions adopted by the Court.

### Instructions for Service and
### Notice of Right to Object

The District Clerk shall serve a copy of this Memorandum and Recommendation on all parties either electronically or by mailing a copy by certified mail, return receipt requested.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), Fed.R.Civ.P., any party who desires to object to this Memorandum and Recommendation must serve and file specific written objections within 14 days after being served with a copy.  ***Such party shall file the objections with the District Clerk and serve the objections on all other parties and the Magistrate Judge***.  A party's failure to file written objections to the findings, conclusions, and recommendations contained in this

38

report within 14 days after being served with a copy shall bar that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of factual findings and legal conclusions to which the party did not object, which were accepted and adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    **SIGNED** December 16, 2011.

_____
JOHN W. PRIMOMO
UNITED STATES MAGISTRATE JUDGE

EXHIBIT A

| CLAIM TERM/ PHRASE/CLAUSE | INDACON'S PROPOSED CONSTRUCTION | FACEBOOK'S PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|
| 1. "File" | Any digital object that contains machine or individual readable or searchable information, including composite files comprised of multiple elements stored in separate files. | A document or digital object, **other than a database**, that contains machine or individual readable or searchable information. | **Any digital object that contains machine or individual readable or searchable information, including a composite file comprised of multiple elements stored in separate files.** |
| 2. "Selectable Database" | One or more databases comprising files selected by a user | A database **that includes one or more distinct databases selected by the user** containing one or more files selected by the user | **A database that includes one or more databases selected by the user containing one or more files selected by the user** |
| 3. "Database Selection Module" | Any combination of hardware and software implemented to enable a user to select files for inclusion in to a selectable database | No construction offered | **Any combination of hardware and software implemented to enable a user to select files for inclusion into a selectable database** |
| 4. "enables selection of a plurality of files for inclusion into at least one selectable data-base" | Allows the user to choose multiple files to be included into at least one selectable database, either by copying files into local storage or maintaining a link to files of interest | Allows the user to choose multiple files to be captured and deposited into a selectable database, as opposed to accessing and retrieving data from other databases | **Allows the user to choose multiple files to be included into at least one selectable database, either by copying files into local storage or maintaining a link to files of interest** |

| CLAIM TERM/ PHRASE/ CLAUSE | INDACON'S PROPOSED CONSTRUCTION | FACEBOOK'S PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|
| 5. "selecting a plurality of the located files . . . for automatic inclusion into at least one selectable database" | Choosing multiple files to be automatically included into at least one selectable database, either by copying files into local storage or maintaining a link to files of interest | Choosing multiple files to be automatically captured and deposited into a distinct selectable database, as opposed to accessing and retrieving data from other databases | **Choosing multiple files to be automatically included into at least one selectable database, either by copying files into local storage or maintaining a link to files of interest** |
| 6. "Term" | Textual or graphical object | Textual expression, such as a word | **Textual or graphical object** |
| 7. "Custom Link" | A link the user can define using a chosen term that allows **instances** of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user | A link the user can define using a chosen term that allows **each instance** of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, **without modifying the files** | **A link the user can define using a chosen term that allows each instance of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, without modifying the original database files** |
| 8. "Custom Linking Relationship" | A linking relationship the user can define using a chosen term that allows **instances** of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user | A linking relationship the user can define using a chosen term that allows **each instance** of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, **without modifying the files** | **A linking relationship the user can define using a chosen term that allows each instance of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, without modifying the original database files** |

| CLAIM TERM/ PHRASE/CLAUSE | INDACON'S PROPOSED CONSTRUCTION | FACEBOOK'S PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|
| 9. "Link Term" | A term chosen by a user that can be displayed as a link to a file specified by the user in the plurality of files | A term chosen by a user that can be displayed as a link to a file specified by the user **whenever the user encounters the term** in the plurality of files | **A term chosen by a user that can be displayed as a link to a file specified by the user whenever the user encounters the term in the plurality of files** |
| 10. "Alias" | Textual or graphical hyperlink that the user can define to serve as an alternative name or label | **Textual expression** that the user can define to serve as an alternative name or label | **Textual or graphical hyperlink that the user can define to serve as an alternative name or label** |
| 11. "Custom Annotations" | Notes specified by the users | Notes specified by users that do not modify any of the selected files | **Notes specified by users that do not modify any of the original database files** |
| 12. "incorporating any user generated custom annota- tions into the index" | If users have generated custom annotations, incorporating those annotations into the index | If users have generated custom annotations, incorporating those annotations into the index without modifying any of the selected files | **If users have generated custom annotations, incorporating those annotations into the index without modifying any of the original database files** |
| 13. "Display" and/or "Displaying" | No construction necessary | To visually present to a computer user.  Merely delivering information to a computer is not displaying | **To visually present to a computer user.  Merely delivering information to a computer is not displaying information.** |

| | | information. | |
|---|---|---|---|
| **CLAIM TERM/ PHRASE/CLAUSE** | **INDACON'S PROPOSED CONSTRUCTION** | **FACEBOOK'S PROPOSED CONSTRUCTION** | **COURT'S CONSTRUCTION** |
| 14."accurately high- lighting the located terms and phrases" | No construction necessary | Visually presenting to the user the located terms and phrases so they are visually distinguished from surround- ing text appearing on the screen. | **Visually presenting to the user the located terms and phrases so they are visually distinguished from surrounding text appearing on the screen.** |