**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| INDACON, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 5:10-CV-966-OLG |
| | § | |
| FACEBOOK, INC. | § | |
| | § | |
| Defendant. | § | |

**INDACON, INC.'S OBJECTIONS TO MAGISTRATE JUDGE'S MEMORANDUM AND
RECOMMENDATION ON CLAIM CONSTRUCTION**

**TABLE OF CONTENTS**

I. Introduction ........................................................................................................................1

II. Standard of Review .............................................................................................................1

III. Objection to the Magistrate's Addition of "Each Instance" Limitation to the
Construction of the "Custom Link" Terms .........................................................................2

    A. The Magistrate Impermissibly Incorporated the "Each Instance"
Limitation from One Dependent Claim into All Asserted Claims ..........................3

    B. The Magistrate Improperly Relied on the Preferred Embodiment .........................7

    C. The Magistrate Misinterpreted Indacon's Opening Claim Construction
Brief—No Admission or Inconsistent Representation was Made ..........................9

IV. Additional Objections .......................................................................................................11

    A. Objection to Inclusion of "Without Modifying the Original Database
Files" Limitation in "Custom Link" and "Custom Annotations"
Constructions ........................................................................................................11

    B. Objection to Construction of "Selectable Database" ............................................12

V. Conclusion ........................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Amgen, Inc. v. Hoechst Marion Roussel, Inc.*,
    314 F.3d 1313 (Fed. Cir. 2003)..........................................................................................8

*Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*,
    No. 3:02–CV–0634–D, 2007 WL 2984673 (N.D. Tex. Oct. 12, 2007) .................................10

*Better Education, Inc. v. Einstruction Corp.*,
    No. 2:08-CV-446, 2010 WL 1711254 (E.D. Tex. Apr. 27, 2010).......................................4, 5

*Genentech, Inc. v. Chiron Corp.*,
    112 F.3d 495 (Fed. Cir. 1997).............................................................................................5

*Heritage Bank v. Redcom Labs., Inc.*,
    250 F.3d 319 (5th Cir. 2001) .............................................................................................11

*LG Elecs., Inc. v. Bizcom Elecs., Inc.*
    453 F.3d 1362 (Fed. Cir. 2006).................................................................................5, 6, 7

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004)........................................................................................4, 6

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996)...........................................................................................................2

*N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*,
    7 F.3d 1571 (Fed. Cir. 1993)..........................................................................................4, 6

*Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*,
    318 F.3d 1143 (Fed. Cir. 2003)..........................................................................................8

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
    553 U.S. 617 (2008)...........................................................................................................5

*SRI Int'l. v. Matsushita Elec. Corp. of Am.*,
    775 F.2d 1107 (Fed. Cir. 1985)..........................................................................................7

*Vitrionics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)..........................................................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 72(b) ................................................................................................................1

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, plaintiff, Indacon, Inc., respectfully submits these objections to Magistrate Judge Primomo's December 16, 2011 Memorandum and Recommendation regarding claim construction (Dkt. No. 80) (the "Recommendation").

## I.   Introduction

The Magistrate's Recommendation contains one serious claim construction error that conflicts with directly on point Federal Circuit law, and two other objectionable claim construction conclusions that the District Judge should promptly correct.  Most pressingly, the Magistrate erroneously construed the related terms "Custom Link," "Custom Linking Relationship," and "Link Term" such that "each instance" of a term chosen to be a custom link or link term in the patented system must be *capable* of being indicated and displayed as a link.[1] Indacon's patent claims plainly demonstrate that this "each instance" limitation is incorrect.  And the Magistrate's justification for improperly injecting this limitation into the claims violates well established canons of claim construction set out by the Federal Circuit.  The District Judge should therefore modify the construction of these "custom link" terms by removing the plainly erroneous "each instance" limitation.  In addition, the District Judge should correct the Magistrate's other objectionable claim construction errors discussed in Section IV below.

## II.   Standard of Review

The District Judge is required to determine *de novo* the parts of the Magistrate Judge's Recommendation that are objected to by Indacon.  Fed. R. Civ. P. 72(b).  Indacon's objections

---

[1] *See* Recommendation at Exhibit A, Terms 7, 8, and 9 (providing the Magistrate's constructions for "Custom Link," "Custom Linking Relationship," and "Link Term" respectively).  For convenience, these three terms will collectively be referred to as the "custom link terms."  In addition, the "each instance" limitation in the "custom link" and "custom linking relationship" constructions and the "whenever the user encounters the term" limitation in the "link term" construction will collectively be referred to as the "each instance" or "all instances" limitation.

1

pertain to the Magistrate's constructions of certain claim terms in the patents-in-suit. Claim construction is a pure question of law for the Court to determine. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996).

### III. Objection to the Magistrate's Addition of "Each Instance" Limitation to the Construction of the "Custom Link" Terms

The Magistrate committed plain error by incorporating an improper "each instance" limitation into every asserted claim through his constructions of "custom link," "custom linking relationship," and "link term." Specifically, the Magistrate took the position that every instance of a "custom link" or "link term" must be *capable* of being identified and displayed as a link, even though this requirement is not recited in the claims.[2] As discussed below, the Magistrate's position is contrary to well established law and his asserted justifications for adding the "each instance" limitations to the "custom link" terms are demonstrably incorrect.

The Magistrate presented three bases in support of his improperly narrow construction of the "custom link" terms, but each argument wholly fails to justify injecting the "each instance" limitation into the claims. First, the Magistrate reasons that, because a dependent claim in the second Indacon patent recites a method where "all instances" of a link term are linked to a designated file, every instance of a designated "link term" or "custom link" *must be capable* of linking to a file *in every case* and *in every claim*.[3] As discussed below, this conclusion is squarely refuted by Federal Circuit law. In fact, under the proper analysis, the Magistrate's conclusion is the exact opposite of the conclusion he should have reached based on the same intrinsic evidence. Second, the Magistrate relies on a passage of the specification describing

---

[2] *See* Recommendation, Exhibit A, Terms 7 "Custom Link," 8 "Custom Linking Relationship," and 9 "Link Term."

[3] *See* Recommendation at 23-24.

features of the preferred embodiment of the invention.[4]  In doing so, the Magistrate again contravened Federal Circuit law, which establishes that embodiments described in the specification should not be used to narrow the claims.  Finally, the Magistrate cites to a so-called "representation" made by Indacon in its opening brief, which he characterizes as supporting the "each instance" limitation.[5]  But Indacon has consistently opposed the improper "each instance" limitation, and the Magistrate's characterization of Indacon's position is a gross misinterpretation.

Because the Magistrate's position is demonstrably incorrect and contrary to well established law, Indacon strongly objects to the inclusion of the "each instance" limitation into the constructions of "custom link" and "custom linking relationship," and the inclusion of the "whenever the user encounters the term" limitation into the construction of "link term," and asks that the District Judge modify the constructions to remove these improper limitations.

### A. *The Magistrate Impermissibly Incorporated the "Each Instance" Limitation from One Dependent Claim into All Asserted Claims*

The Magistrate's first justification for adding the "each instance" limitation to the construction of the "custom link" terms is premised on a fundamentally flawed claim construction analysis.  The Magistrate improperly found that a limitation in dependent claim 22 of the second Indacon patent should dictate the meaning of "link term" and "custom link" in all asserted claims in both patents.[6]  Because dependent claim 22 comprises the step of "automatically generating links between all instances of a designated link term," the Magistrate reasoned that each instance of the "link term" recited in independent claim 19 must be *capable* of

---

[4] *See* Recommendation at 24-25.

[5] *See* Recommendation at 25-26.

[6] *See* Recommendation at 23-24 (discussing claims 19 and 22 of U.S. Patent No. 7,836,043 Patent (the '043 Patent)).  The '043 Patent is attached to these Objections as Exhibit 1.

3

being displayed as a link in every case.[7]  The Magistrate's approach has the practical effect of imparting the "all instances" limitation of dependent claim 22 to independent claim 19 and the other asserted claims.  This is flatly inconsistent with well established law.  *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) ("As this court has frequently stated, the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim."); *N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*, 7 F.3d 1571, 1577 (Fed. Cir. 1993) ("The dependent claim tail cannot wag the independent claim dog."), *reh'g denied*.

      The clear error in the Magistrate's approach is readily apparent when considered in view of Magistrate Judge Everingham's analysis of an identical claim construction issue.  *See Better Education, Inc. v. Einstruction Corp.*, No. 2:08-CV-446, 2010 WL 1711254 (E.D. Tex. Apr. 27, 2010).  In the patent at issue in *Better Education*, an independent claim required allowing a teacher to start and stop student tasks in an interactive classroom system "at a pace that is under control of the teacher."  *Id*. at *3.  A dependent claim added the further limitation of allowing the system to set different time limits for individual students to complete the tasks.  *Id*. at *4.  The defendant argued that the independent claim should be interpreted so that "the system must be *capable* of setting different time limits for individual students."  *Id*. at *3 (emphasis added).  In other words, the defendant argued that the "pacing" element in the independent claim must be *capable* of satisfying the "individual student" element of the dependent claim.  Relying on Federal Circuit law, Judge Everingham determined that the dependent claim and "the doctrine of claim differentiation counsels against the construction asserted by the defendants."  *Id*. at *4

---

[7] *See* Recommendation at 24 ("However, as Facebook duly notes, if all instances of custom links were not capable of being displayed, Claim 22, which encompasses the method of Claim 19, and *further encompasses* 'the step of automatically generating links between *all instances* of a designated link term . . . ,' could not be effectuated.").

(citing *Liebel-Flarsheim*, 358 F.3d at 910).  This is the proper conclusion, and it is the one the Magistrate should have reached on what are essentially the same facts in the present case.

The Magistrate's reasoning is further refuted by Federal Circuit law.  In *LG Elecs., Inc. v. Bizcom Elecs., Inc.*, the Federal Circuit held that the trial court erred in construing an information processing system claim to require "the execution of all write requests."  453 F.3d 1364, 1379 (Fed. Cir. 2006) (emphasis added), *rev'd on other grounds pertaining to patent exhaustion*, *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008).  The Federal Circuit observed that the "all write requests" limitation was not recited in the independent claim at issue, but was expressly required by a dependent claim.  *Id*.  The panel reasoned that the inclusion of the "all write requests" limitation in the dependent claim was evidence that this limitation should *not* be read into the independent claim.  *Id*. (noting the "utility of claim differentiation" in claim construction (citing *Phillips v. AWH Corp*., 415 F.3d 1303, 1314 (Fed. Cir. 2005)).  Thus, instead of using the dependent claim to narrow the scope of the independent claim—the Magistrate's approach—the Federal Circuit correctly concluded that the dependent claim supported a *broader* interpretation of the claim terms.  *Id*.

The Magistrate's reliance on the definition of "comprising" in *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) to narrow the scope of the claims is misplaced.  In that case, the Court stated that "comprising" is a term of art, "which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim."  *Id*. (emphasis added).  Relying in part on the "open ended" "comprising" language in the claims, the Court determined that the term "joined" should not be given the more narrow interpretation of "directly joined."  *Id*.  Thus, the Federal Circuit concluded that "comprising" suggested a broad interpretation of the claims.  Yet the Magistrate appears to rely on *Genentech*

5

to support the exact opposite conclusion—that the use of "comprising" permits incorporating limitations from dependent claims into the independent claims.  This conclusion is unsupported by the *Genentech* decision and, as already discussed, is contrary to well established law.

It is not surprising that other courts consistently reach a different conclusion than the Magistrate on similar facts when the effect of the Magistrate's flawed approach on the scope of the claims is fully considered.  The Magistrate's determination that the independent claims must be capable of meeting the "all instances" limitation in dependent claim 22 in every case overlooks the fact that Indacon was free to draft inconsistent or mutually exclusive dependent claims.  For example, Indacon could have drafted a claim reciting: "The method of claim 19, further comprising the step of automatically generating links between instances of a designated link term, wherein instances of the designated link term in photo captions are incapable of being displayed as a link."  Nothing in claim 19 precludes this hypothetical dependent claim.  It is only when the artificial "each instance" limitation derived from dependent claim 22 is injected into claim 19 that the hypothetical dependent claim becomes improper.  This is precisely why the Federal Circuit has held that the "dependent claim tail cannot wag the independent claim dog." *Am. Vaccine*, 7 F.3d at 1577.

Not only do the patent claims fail to support the Magistrate's construction, they are some of the best evidence *against* adding the "each instance" limitation to the "custom link" constructions.  First, as already discussed, the doctrine of claim differentiation dictates that the "all instances" element of dependent claim 22 should not be incorporated into independent claim 19, which is the practical impact of the Magistrate's construction.  *See LG Elecs.*, 453 F.3d at 1379; *Liebel-Flarsheim*, 358 F.3d at 910.

Second, the variance in the claims demonstrates that the inventors intended the "all instances" limitation to apply only to *certain* claims where the limitation is expressly claimed. *See SRI Int'l. v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1122 (Fed. Cir. 1985) (en banc) (It is "well settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim."); *LG Elecs.*, 453 F.3d at 1377 (finding error in trial court's reading of a limitation into an independent claim when the same limitation was expressly claimed in another claim).  For example, claims 14 and 15 of the '276 Patent claim the step of "automatically generating links between <u>all instances</u> of the link term within the plurality of selected source files and the designated file."[8]  In other claims, however, the inventors claimed link modules "operable to link <u>multiple instances</u> of the designated link term" with the selected files.[9]  In still other claims—including the asserted claims—the inventors did not place *any* specific limitation on the number of instances of custom links in the files that should be linked to a target file.  Thus, "custom links," "link term," and "custom linking relationship" cannot be construed so that <u>each instance</u> must be *capable* of being hyperlinked, because some claims do not require linking of each instance of the term.  On the contrary, the inventors specifically declined to require the link term to operate as a link in *all* instances in the asserted claims.

B.     *<u>The Magistrate Improperly Relied on the Preferred Embodiment</u>*

The Magistrate next improperly relied on a description of the preferred embodiment to support the addition of the "each instance" limitation to the construction of the "custom link"

---

[8] *See* U.S. Patent 6,834,276, Claims 14, 15 (the '276 Patent) (attached to these Objections as Exhibit 2).

[9] '276 Patent, Claim 12 (claiming a link module that is "operable to link <u>multiple instances</u> of the designated link term in the plurality of selected source files with the designated file).  *See also* '043 Patent, Claim 16 (reciting a link module "operable to automatically link multiple instances of the designated link term in the plurality of selected source files with the designated file").

7

terms. Specifically, the Magistrate quotes from a paragraph in the "Detailed Description of the Preferred Embodiment" section of the patent describing one implementation of "custom links" in the invention.[10] But, it is improper to use a description of the preferred embodiment to narrow the broader meaning of "custom links" contemplated by the patents. *See Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143, 1151-52 (Fed. Cir. 2003) ("[B]road claims supported by the written description should not be limited in their interpretation to a preferred embodiment."); *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1328 (Fed. Cir. 2003) ("[O]ur precedent is clear that claims are not perforce limited to the embodiments disclosed in the specification."). As already discussed, under a correct claim construction analysis, the claims themselves demonstrate that "custom links" need not be capable of being linked in all instances.

Moreover, the preferred embodiment description quoted by the Magistrate includes additional language that plainly demonstrates that it should not be used to add limitations to the claims. In the quoted paragraph, the "link module" is described as enabling the user to define "field links"—a feature that is indisputably not recited in claim 1 or many other claims.[11] But no one has taken the position that the "link module" should be construed as a module that is *capable* of defining "field links" in every claim, nor would it be reasonable to do so. The "link module" is further described as allowing an "essentially unlimited" number of link term file pairs to be created.[12] Again, not even Facebook has argued that a software system must be capable of handling an *unlimited* number of links in order to be covered by the claims. But the flawed rationale employed by the Magistrate in construing "custom link" would seem to support both of these clearly incorrect interpretations of "link module." This is precisely the reason the Federal

---

[10] *See* Recommendation at 24 (quoting '276 Patent at col. 11, ll. 19-32).

[11] *See* '276 Patent at col. 11, ll. 38-40.

[12] '276 Patent at col. 11, ll. 27-28.

Circuit has held that it is improper to rely on the description of the preferred embodiment to construe claim terms.

### C. *The Magistrate Misinterpreted Indacon's Opening Claim Construction Brief— No Admission or Inconsistent Representation was Made*

The Magistrate's final basis for adding the "each instance" limitation to the construction of the "custom link" terms is based on a gross misinterpretation of Indacon's Opening Claim Construction Brief.[13] Indacon has *never* stated or suggested that every instance of the custom link in the files *must be capable* of being identified and displayed as a link. In fact, this would be inconsistent with the claims, as discussed above. The passage quoted by the Magistrate focuses on describing the "custom" nature of "custom links"—i.e., the user need not define the association between the link term and the desired target file every time a link is to be inserted "elsewhere in the database."[14] The quoted passage does not say that the link term is "always" converted to a link, nor does it say that link terms are converted to links "everywhere in the database." In fact, the passage is completely silent on whether every instance of the link term in the files must be capable of being identified as a link. Thus, it is unclear how the Magistrate reached the conclusion that Indacon's statement—made while giving a brief summary of the preferred embodiment[15]—rises to the level of an admission that overcomes the claim language itself.

Moreover, the Magistrate implies that Indacon somehow changed its position on the "each instance" limitation since filing its opening brief, but this is simply incorrect. Facebook's position regarding the "each instance" limitation was first presented in its Preliminary Proposed

---

[13] *See* Recommendation at 25-26.

[14] *See* Indacon's Opening Claim Construction Brief at 3-4 (Dkt. No. 38).

[15] *See* Indacon's Opening Claim Construction Brief at 2 ("The system shown in Figure 1C of both Patents depicts one embodiment of the invention") (emphasis added).

9

Claim Constructions served on June 7, 2011.[16]  Indacon opposed Facebook's proposed construction, as evidenced by the lack of an agreed construction for the "custom link" terms. Thus, when Indacon filed its Opening Claim Construction Brief on June 28, 2011, Indacon was well aware of Facebook's proposed "each instance" construction and plainly did not agree that this improper limitation was somehow correct.  In fact, Indacon consistently and vigorously opposed the "each instance" limitation at every opportunity throughout its claim construction briefing and at the *Markman* hearing.[17]  Even Facebook did not argue that the passage relied on by the Magistrate somehow supported Facebook's construction of the "custom link" terms.

In any event, even if Indacon had made a representation regarding the "each instance" limitation, a statement made in the course of litigation cannot be used to import unsupported limitations into the claims.  As already discussed, claim differentiation and the intrinsic evidence—particularly the variance in the claims themselves—establishes that the "each instance" limitation should not be in the "custom link" constructions.  Accordingly, it is improper to rely on extrinsic evidence, such as litigation materials, to inject the limitation into the claims. *See Vitrionics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (holding that it is improper to rely on "extrinsic evidence introduced at trial, such as expert testimony," when the intrinsic evidence supports a construction); *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, No. 3:02–CV–0634–D, 2007 WL 2984673, at *4 (N.D. Tex. Oct. 12, 2007) (finding that a party's position in a Joint Claim Construction Statement was not a "binding party admission" regarding claim

---

[16] *See* Facebook's Preliminary Proposed Claim Constructions, June 7, 2011, at 1-2 (defining "custom links" and "link term" to require "all existing instances of the term" to automatically become linked) (attached to these Objections as Exh. 3).

[17] *See* Indacon's Responsive Claim Construction Brief at 13-18 (Dkt. No. 46); Indacon's Sur-Reply Claim Construction Brief at 9-11 (Dkt. No. 55).

construction and that it would be improper to consider such extrinsic evidence in claim construction).

Moreover, to the extent the Magistrate is asserting that Indacon's statement rises to the level of a judicial admission, he has not shown that the statement meets the high bar required in this Circuit. *See Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001) (setting out requirements for finding a judicial admission). Nor could he, because Indacon's statement cannot be characterized as a "deliberate, clear, and unequivocal" admission. *Id.* As already discussed, the statement simply does not mean what the Magistrate suggests.

## IV. Additional Objections

### A. Objection to Inclusion of "Without Modifying the Original Database Files" Limitation in "Custom Link" and "Custom Annotations" Constructions

Indacon further objects to the Magistrate's inclusion of the "without modifying the original database files" limitation in the "custom link" constructions and the "do not modify any of the original database files" limitation in the "custom annotations" terms.[18] Although the Magistrate's addition of "*original database* files" to Facebook's proposed constructions for these terms is more in line with the specification, the Magistrate's constructions are still improperly narrow. The "Summary of the Invention" in the patent clearly states that the system may "accurately place reference links among documents within a database it creates according to a schema controlled by the user."[19] At most, the specification suggests that files do not necessarily need to be modified, *i.e.*, converted to a different format, to be included in the database. Therefore, the District Judge should remove the entire "without modifying the original database files" limitation from these constructions.

---

[18] *See* Recommendation, Exhibit A Terms 7, 8, 11, and 12.
[19] '276 Patent at col. 6, ll. 32-35.

11

### B.  *Objection to Construction of "Selectable Database"*

Indacon further objects to the Magistrate's construction of "selectable database." Contrary to the Magistrate's determination, the claims and the specification address the selectability of the *files* to be included in the database, not the selectability of a particular database from among a group of databases.[20] This interpretation is supported by the Magistrate's construction of "Database Selection Module," which correctly states that the "Database Selection Module" enables "a user to select *files* for inclusion into a selectable database."[21] This is entirely consistent with the intrinsic evidence.[22]

Moreover, the Magistrate's construction does not follow from his reasoning that "the adjective 'selectable' would appear to be of significance."[23] The Magistrate construed "selectable database" to mean "a database that includes one or more databases selected by the user. . . ." Under this construction, it is not the "selectable database" itself that is "selectable," but the "one or more databases" included in the selectable database. Thus, the adjective "selectable" in the Magistrate's construction is not somehow a more correct application of the adjective than in Indacon's proposed construction. To the contrary, interpreting "selectable" to refer to the files in the database rather than the database itself is more consistent with the claims, the specification, and the Magistrate's correct construction of Database Selection Module.

Accordingly, the District Judge should revise the construction of Selectable Database to read "one or more databases comprising files selected by a user."

---

[20] '276 Patent at Claims 1, 2, and 4.

[21] Recommendation at Exhibit A, Term 3 (emphasis added).

[22] *See* '276 Patent at col. 10, l. 66-col 11, l. 2 ("[t]he system shown in FIG. 1C includes a database selection module that enables a user to select any number of any type of files from the file database for inclusion into a selectable database.").

[23] Recommendation at 10.

**V.** **Conclusion**

For the foregoing reasons, Indacon respectfully requests that the Magistrate's claim constructions set out in Exhibit A of the Memorandum and Recommendation (Dkt. 80) be modified to read as follows:

| | | |
|---|---|---|
| 7. | **Custom Link** | A link the user can define using a chosen term that allows **instances** of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user. |
| | | *Or, in the alternative*: |
| | | A link the user can define using a chosen term that allows **instances** of the term in the plurality of flies to be identified and displayed as a link to a file chosen by the user, without modifying the original database files. |
| 8. | **Custom Linking Relationship** | A linking relationship the user can define using a chosen term that allows **instances** of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user. |
| | | *Or, in the alternative*: |
| | | A linking relationship the user can define using a chosen term that allows **instances** of the term in the plurality of flies to be identified and displayed as a link to a file chosen by the user, without modifying the original database files. |
| 9. | **Link Term** | A term chosen by a user that can be displayed as a link to a file specified by the user in the plurality of files. |
| 11. | **Custom Annotations** | Notes specified by users. |
| 12. | **Incorporating any user generated custom annotations into the index** | If users have generated custom annotations, incorporating those annotations into the index. |
| 2. | **Selectable Database** | One or more databases comprising files selected by a user. |

                Respectfully submitted,

*/s/ R. Laurence Macon*
_____
**R. LAURENCE MACON**
State Bar No. 12787500
lmacon@akingump.com
**KIRT S. O'NEILL**
State Bar No. 00788147
koneill@akingump.com
**JANIE A. SHANNON**
State Bar No. 00797416
jshannon@akingump.com
**DANIEL MOFFETT**
State Bar No. 24051068
dmoffett@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1600 Bank of America Plaza
300 Convent Street
San Antonio, Texas  78205
(210) 281-7000 telephone
(210) 224-2035 facsimile

**ATTORNEYS FOR PLAINTIFF,
INDACON, INC.**

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was served electronically in compliance with Local Rule CV-5(a).  As such, the foregoing document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(b)(1). Pursuant to Fed. R. Civ. P. 5(a)-(d) and Local Rule CV-5(b)(2), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 30th day of December, 2011.

*/s/ R. Laurence Macon*
_____
R. LAURENCE MACON