FILED

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

SEP 0 6 2013

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| INDACON, INC., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Cause No. SA-10-CA-00966-OLG |
| | § | |
| FACEBOOK, INC., | § | |
|     Defendant. | § | |
| | § | |

**ORDER ADOPTING IN PART MEMORANDUM AND RECOMMENDATION**

On this date came on to be considered the Memorandum and Recommendation (docket

no. 80) of United States Magistrate Judge John W. Primomo filed in this cause on December 16,

2011 in which he recommends that US Patents No. 6,834,276 (the '276 patent) entitled

"Database System and Method for Data Acquisition and Perusal", and its continuation, US

Patent No. 7,836,043 (the '043 patent) be construed in various ways.  The parties have filed

voluminous objections (docket no. 91 & 93) to the Magistrate Judge's claim construction.  When

such objections are filed, the Court reviews the matters raised by the objections *de novo. See* 28

U.S.C. § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions

of the report or specified proposed findings and recommendations to which objection is made.").

After reviewing the Memorandum and Recommendation and the papers on file in this case, the

Court concludes that the Magistrate Judge's recommendations should be accepted in part and

rejected in part as outlined below, and that this.

I.     **Background**

The two patents in suit, Patent '276 and '043, are related and claim priority to a common

original application filed February 25, 1999.  Further, both patents share substantially the same

description of the preferred embodiments.  The patents-in-suit disclose a method and a system for acquiring, creating, manipulating, indexing and perusing data.  The system is based on four modules: a database selection module; a link module; a database index generator module; and a search module.

The parties have agreed to two of the claim constructions as proposed by the Magistrate Judge, the remaining twelve constructions are in dispute.

## II.    **Claim Construction Principles**

The construction of a patent claim is a matter of law exclusively for the Court to decide. *Markman v. Westview Instr., Inc.,* 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370 (1996).  In construing claim language to ascertain its meaning of a word or phrase, the court looks at three sources: the specification, the claims, and the prosecution history.  *Markman,* 52 F.3d at 979.  However, "[e]xpert testimony, including evidence of how those skilled in the art would interpret the claims, may also be used." *Markman,* 52 F.3d at 979 (quoting *Fonar Corp. v. Johnson & Johnson,* 821 F.2d 627, 631 (Fed.Cir.1987)).

The claims of a patent must be read in light of the specification of which the claims are a part. *Markman,* 52 F.3d at 979 (quoting *Autogiro Co. of Am. v. United States,* 384 F.2d 391, 397 (Ct. Cl. 1967)); *see also Winans v. Denmead,* 56 U.S. 330, 338, (1853); *Bates v. Coe,* 98 U.S. 31 at 38-39 (1878).  The specification is the written description of the claimed invention, which enables one of ordinary skill in the art to make and use the invention.  *Markman,* 52 F.3d at 979. For claim construction purposes, the specification can constitute a "sort of dictionary, which explains the invention and may define terms used in the claims" *Id.*  The specification itself does not restrict the right to exclude; rather, that is the function and purpose of claims. *Id.* at 980.

Claim terms are typically given their "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005). "The person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313.

To ascertain the "ordinary and customary meaning" of a claim term, "the court looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Phillips*, at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). The sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314.. However, extrinsic evidence is less significant than the intrinsic record in determining the legally operative meaning of patent claim language. *Id.* at 1317. Extrinsic evidence in the form of expert testimony is beneficial "for [a] variety of purposes, such as to provide background on [the] technology at issue, to explain how [an] invention works, to ensure that [a] court's understanding of [the] technical aspects of [a] patent is consistent with that of person of skill in the art, or to establish that [a] particular term in [a] patent or prior art has [a] particular meaning in [a] pertinent field." *Id.* at 1318.

Similar to the specification, the prosecution history of a patent attempts to explain the patent and provide evidence of how the PTO and the inventor understood the patent. *Phillips*, at 1317. The prosecution history of a patent is often referred to as the Patent File Wrapper upon the issuance of a patent. Black's Law Dictionary defines the Patent File Wrapper as:

> The complete record of proceedings in the [United States] Patent and Trademark Office from the initial application to the issued patent . . . ; specif., a patent . . . application together with all documentation, correspondence, and any other record of proceedings before the [United States Patent and Trademark Office] concerning that application. — Also termed file history; prosecution history.

BLACK'S LAW DICTIONARY 704 (9th ed. 2009). Additionally, the prosecution history of a patent, is designated as part of the "intrinsic evidence," and consists of the complete record of the proceedings before the United States Patent and Trademark Office ("USPTO") and includes the prior art cited during the examination of the patent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (quoting *Autogiro Co. of Am. v. United States*, 384 F.2d 391, 399 (Ct. Cl. 1967)).

The prosecution history of a patent often lacks the clarity of the specification, and thus is less useful for claim construction purposes. *See Phillips* at 1317 ("The prosecution history comprises an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation."). The prosecution history of the patent often provides advice as to the meaning of the claim language, by demonstrating how the inventor understood the invention and whether said inventor limited the invention during the prosecution of the patent, whereby the patents scope is narrower than it otherwise would be. *See Phillips* at 1317; *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'") (quoting *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed. Cir. 1988)); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995).

Therefore, in construing the meaning of the claims in the case at bar, all the aforementioned sources (the specification, the claims, and the prosecution history), including extrinsic evidence can be used. *Markman* at 979.

### III.   **Disputed Terms & Phrases Construction**

The Magistrate Judge's Memorandum and Recommendation (docket. No. 80) adopted fourteen constructions of various term phrases that are in dispute within the '276 Patent and '043 Patent. The parties objected to twelve terms and phrases, and agree on two claim constructions by the Magistrate Judge.

### a.   "File"

| Location | | Indacon Suggested Construction | Facebook Suggested Construction | Magistrate Judge's Construction | District Court's Construction |
|---|---|---|---|---|---|
| Patent '276 | Claim No. 1-4 & 8-11 | Any digital object that contains machine or individual readable or searchable information, including composite files comprised of multiple elements stored in separate files. | A document or digital object, **other than a database**, that contains machine or individual readable or searchable information | **Any digital object that contains machine or individual readable or searchable information, including a composite file comprised of multiple elements stored in separate files.** | Adopt Magistrate Judge's construction |
| Patent '043 | Claim No. 19 & 21 | | | | |

The Memorandum and Recommendation (docket no. 80) adopts the construction of the term "File" within the claims in the aforementioned location, similar to the proposed construction of Indacon.

The Magistrates construction of the term 'File' is adopted in its entirety.

Facebook objects to the Memorandum and Recommendation (docket no. 80) on three grounds. First, Facebook argues that a 'file' is distinct from a 'database'. Second, the

construction of the phrase 'composite file' is inaccurate.  Finally, Facebook argues that the term "database" should not be construed at the present time claiming it is not ripe for construction.

First, Facebook objects to the Memorandum and Recommendation (docket no. 80) claiming that a 'file' is distinct from a 'database' by arguing that the claims would make no sense "if a file could be a database or vis-versa." (Docket no. 91).  Facebook correctly noted that claim terms are typically given their "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).  However, a person of ordinary skill in the art is to read the claim term not only in the context of a particular claim but also in the context of the entire patent, including the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).  Furthermore, the Federal Circuit has stated that it "cannot look at the ordinary meaning of the term ... in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history." *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed.Cir.2005).  Additionally, the specification "is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

Even though claims are typically given their ordinary and customary meaning to a person skilled in the art at the time of the invention, an inventor is allowed to define certain terms within the specification.  The Federal Circuit, in *Phillips v. AWH Corp.*, claimed that "our cases recognize that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." 415 F.3d 1303, 1316 (Fed. Cir. 2005).

The specification, for claim construction purposes, can constitute a "sort of dictionary, which explains the invention and may define terms used in the claims" *Markman*, 52 F.3d at 979. The term "file", is expressly defined in the specification as "encompass[ing] documents and any other digital object that contains machine or individual readable or searchable information." U.S. Patent No. 6,834,276 col.9 ll.20-24 (filed Feb. 25, 1999). The specification further provides examples of various file types that can be contained within a file database: "internet or HTML format (or simply HTM), word processor format including DOC files generated by MS-Word, or similar word processing files generated by WordPerect®, text format, RTF (Rich Text Format) files, drawing files, *database files, etc.*" '276 Patent, col.10   ll.51-56 (emphasis added). Basically, the specification states that a 'file' can include various internet file types, word processing file types, drawing files as well as database files. Therefore, specifically excluding the term 'database' from the definition of a 'file' is inconsistent with the definition of a 'file' as defined in the patents at issue.

Second, Facebook further objects to the Memorandum and Recommendation claiming that it mischaracterized what a 'composite file' is. Facebook does not dispute that a composite file is a type of file; rather Facebook claims that "elements stored in different files are not part of the composite file." (docket no. 91 at 18).

The court finds Facebook's objection unpersuasive as the specification coupled with the preferred embodiment teaches away from said objection. The specification explains that a 'composite file' "appears to be a single document presented on the computer monitor but which actually may be a compilation of multiple text and graphic elements stored in separate files." '276 Patent, col.10 ll.16-23. The specification teaches that a 'composite file' is a compilation of many elements which *may* be stored as separate files. '276 Patent, col.10 ll.16-23.  The

specification further lists "HTML format files used over the internet" as an example of a composite file, as HTML files *include* "display codes…, graphics, fonts, hyperlinks, and other characteristics…". '276 Patent, col.10, ll.15-19.  Furthermore, the issue as to whether the elements stored as separate files are part of the 'composite file' is addressed by the preferred embodiment of the invention as the specification states that the "system according to the present invention *includes special features for handling composite file types*". '276 Patent, col.10 ll.15-16 (emphasis added).   Fig. 4a, of the '276 patent illustrates the application the invention regarding HTML files (an example of a 'composite file'). '276 Patent, cols.22-24. The Federal Circuit in *Adams Respiratory Therapeutics v. Perrigo*, held that excluding the preferred embodiment from construction is "rarely if ever correct". 616 F.3d 1283, 1290 (Fed. Cir. 2010). Therefore, a composite file can include multiple elements stored in separate files.

Similarly, the Court finds Facebook's third argument, that the term 'database' is not ripe for construction, to be irrelevant in construing the term 'file,' and regardless, finds the argument unpersuasive.

   b.  **"Selectable Database"**

| Location | | Indacon Suggested Construction | Facebook Suggested Construction | Magistrate Judge's Construction | District Court's Construction |
|---|---|---|---|---|---|
| Patent '276 | Claim No. 1-4 & 8-11 | One of More databases comprising files selected by a user | A database that **includes one or more distinct databases selected by the user** containing one or more files selected by the user | **A database that includes one or more databases selected by the user containing one or more files selected by the user** | Adopt Magistrate Judge's construction |

The Memorandum and Recommendation (docket no. 80) adopts the construction of the term "Selectable Database" within the claims in the aforementioned location, similar to the proposed construction of Facebook.

Both Facebook and Indacon agree that the aforementioned phrase includes files selected by the user, however, both parties object to the Memorandum and Recommendation on various grounds. The objections are overruled and the Magistrate Judge's construction of the term 'Selectable Database' is adopted in its entirety.

Indacon objects to the Memorandum and Recommendation claiming that the word 'selectable' refers to the selectability of files in the database not the selectability of a particular database from among a group of databases (docket no. 93 at 12). However, both the claims and the specification teach away from what Indacon suggests.

The claimed invention is comprised of four modules; the first module is entitled "a database selection module." The specific claim language describing said module, provides for "… *a database selection module that enables selection of a plurality of files for inclusion into at least one selectable database*…". '276 Patent, col.34 ll.56 (emphasis added). The claim inserts the word 'selectable' to describe the database, implying that there are multiple databases. Conversely, Indacon asserts that the term 'selectable' assists in identifying the database, as it refers to the user selected files within the database. The specification, in describing the 'database selection module,' supports the former rather than the later.

The specification, in describing the 'database selection module,' states: "The system shown in FIG. 1C includes a database selection module that enables a user to *select any number of any type of files from the file database for inclusion into a selectable database. . . .*" '276 Patent, col.10 ll.66-67, col.11 ll.1-2. The specification describes the 'database selection module'

as having two particular databases, (1) a 'file database' and (2) a *selectable* database'; whereby files are selected by the user in the 'file database' to be included into the *selectable* database(s)'. The specification further describes the *selectable* database' as comprising: "…one or more databases…" '276 Patent, col.11 ll.8-9.  The files selected from the 'file database' to be included into the 'selectable database(s)' can include one or more databases.

The constant use of 'selected' and its counterpart 'selectable' throughout the patent specification and claims indicate that the term refers to selectability of a particular database not the selectability of files to be included in a database.

Facebook objects to the Memorandum and Recommendation claiming that the claim construction should include the term 'distinct'—thereby further distinguishing the databases. (docket no. 91 at 8). Facebook's proposed modification is unnecessary.

c.  **"Database Selection Module"**

| Location | | Indacon Suggested Construction | Facebook Suggested Construction | Magistrate Judge's Construction | District Court's Construction |
|---|---|---|---|---|---|
| Patent | Claim No. | Any combination of hardware and software implemented to enable a user to select files for inclusion in to a selectable database | No construction offered | **Any combination of hardware and software implemented to enable a user to select files for inclusion in to a selectable database** | Adopt Magistrate Judge's construction |
| '276 | 1-4 | | | | |

The Memorandum and Recommendation adopts the construction of the phrase "Database Selection Module" within the claims in the aforementioned location, analogous to the proposed construction of Indacon.

For the reasons stated below, the Magistrate's construction of the phrase "Database Selection Module" is adopted in its entirety.

Facebook objects to the Memorandum and Recommendation claiming that the phrase "Database Selection Module" is indefinite and therefore invalid as argued in Facebook's Motion for Summary Judgment.   (docket Nos. 40, 51).   Facebook argues that the term, 'Module', is purely functional thereby the term fails to point out the scope of the alleged invention.

A patent is presumed valid, and Facebook, as the party seeking to invalidate a patent, bears the burden of overcoming the presumption of validity by clear and convincing evidence. 35 U.S.C. § 282; *Microsoft Corp. v. i4i Ltd. Partnership*, 131 S.Ct. 2238, 2243, (2011); *United Sates Gypsum Co. v. Nat'l Gypsum Co.*, 74 F.3d 1209, 1212 (Fed. Cir. 1996); *Hibritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986).   Close questions of indefiniteness "are properly resolved in favor of the patentee." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed.Cir.2005); *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1380 (Fed.Cir.2001)

To rule "on a claim of patent indefiniteness, a court must determine whether one skilled in the art would understand what is claimed when the claim is read in light of the specification." *Bancorp. Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1372 (Fed.Cir.2004).   The Magistrate Judge found that the term 'Module' as used in the claims at issue indicates sufficient structure to one of ordinary skill in the art, thereby resolving Facebook's argument that the term was purely functional. (docket 79 at 10-13).

This court affirms the Magistrate's denial of Facebook's summary judgment motion (docket no. 79).   Further, since Facebook did not offer any subsequent construction, the Court adopts Indacon's construction for the phrase "Database Selection Module".

d.   "enables selection of a pularity of files for inclusion into at least one selectable database"

| Location | | Indacon Suggested Construction | Facebook Suggested Construction | Magistrate Judge's Construction | District Court's Construction |
|---|---|---|---|---|---|
| Patent '276 | Claim No. 1-4 | Allows the user to choose multiple files to be included into at least one selectable database, either by copying files into local storage or maintaining a link to files of interest | Allows the user to choose multiple files to be captured and deposited into a selectable database as opposed to accessing and retrieving data from other databases | Allows the user to choose multiple files to be included into at least one selectable database, either by copying files into local storage or maintaining a link to files of interest | Adopt Magistrate Judge's Construction |

See *Infra* Section III(e).

e.   "Selecting a plurality of the located files... for automatic inclusion into at least one selectable database"

| Location | | Indacon Suggested Construction | Facebook Suggested Construction | Magistrate Judge's Construction | District Court's Construction |
|---|---|---|---|---|---|
| Patent '276 | Claim No. 8-11 | Choosing multiple files to be automatically included into at least one selectable database, either by copying files into local storage or maintaining a link to files of interest | Choosing multiple files to be automatically captured and deposited into a distinct selectable database, as opposed to accessing and retrieving data from another database | Choosing Multiple files to be automatically included into at least one selectable database, either by copying files into local storage or maintaining a link to files of interest | Adopt Magistrate Judge's Construction |

The Memorandum and Recommendation adopts the construction of the phrases *"enables selection of a pularity of files for inclusion into at least one selectable database"* and *"Selecting a plurality of the located files... for automatic inclusion into at least one selectable database"* within the claims in the aforementioned location, analogous to the proposed construction of Indacon.

Just as the Magistrate Judge, in the Memorandum and Recommendation, combines two disputed claim phrases into one analysis as they share a common clause: *"for [automatic] inclusion into at least one selectable database"*, this Court does so as well.

The Magistrate's construction of the phrases *"enables selection of a pularity of files for inclusion into at least one selectable database"* and *"[s]electing a plurality of the located files... for automatic inclusion into at least one selectable database"* is adopted in its entirety.

Facebook objects to the Memorandum and Recommendation claiming that (1) the claim language itself supports Facebook's construction; and (2) the prosecution history of the patent confirms Facebook's construction of the terms.

Frist, Facebook asserts that the plain language of the claims support its claim construction, Because the claim terms "file" and "inclusion into . . . [a] database" support a showing that the file is placed *inside* the database, not that the file is left *outside* of the database, whereby the database contains merely a link to that file. (docket no. 91 at 8-9).

However, the claims of a patent must be read in light of the specification to which the claims are a part of. *Markman*, 52 F.3d at 979. For claim construction purposes, the specification can constitute a "sort of dictionary, which explains the invention and may define terms used in the claims" *Id.* "[T]he specification...is the single best guide to the meaning of a

disputed claims". *Phillips*, at 1315. The specification of the '276 patent reveals that files

included in a database can be maintained by a link to such files.

> The database selection module may be configured to enable selection of the
> plurality of files both locally and remotely via a network. For example the data
> acquisition and perusal system and method may be implemented on a computer
> coupled to a network, where the network may further be connected to the
> internet. The data acquisition and perusal system and method may be configured
> to *copy* internet files to a local storage disk, *or to simply maintain a link to the*
> *internet files of interest.*
>
> . . .
>
> Files may be copied into local storage *or may be simply accessed via an existing*
> *link to that file.*
>
> . . .
>
> If the documents of the database index are located remotely, e.g., on the World
> Wide Web (WWW) of the internet, the source file location edit box contains a
> hypertext transfer protocol address, i.e., an 'http' (HyperText Translation
> Protocol) address to the location. Of course, other types of
> addresses/designations are available for remotely accessible files, and these
> various types of addresses/designations are entered into the source file location
> edit box in a similar manner.

'276 Patent col.5 ll.53-61, col.10 ll.60-65, col.26 ll.34-46.

As explained in the specification, the patent teaches similarly to Indacon's proposed

construction, where "files can be included into a selectable database" compared to Facebook's

proposed claim construction which asserts files are "*captured and deposited into a distinct*

*selectable database.*" Further, the patent also purports that files in a database can be maintained

by a link to said files, as portrayed that the patents emphasis on including internet files into the

users database.

Secondly, Facebook argues that during the prosecution of the patent, Indacon disclaimed

certain subject matter that they rely on for this claim construction, thereby, allowing Facebook to

limit the claimed language. Facebook asserts that the Magistrate Judge in his Memorandum and

Recommendation "was looking for magic 'disclaimer' language . . ." (docket 91 at 2) in finding

a clear and unmistakable disclaimer of subject matter in the prosecution history.

The prosecution history of the patent often advises to the meaning of the claim language

by demonstrating how the inventor understood the invention and whether the inventor limited the

invention during the prosecution of the patent, whereby the patents scope is narrower than it

otherwise would be. *See Phillips* at 1317. Further, the prosecution history of a patent constitutes

a public record of the patentee's representations concerning the scope and meaning of the claims

within the patent, allowing competitors to rely on those representations when ascertaining the

degree of lawful conduct. *Searchange Intern., Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1372 (2005).

The public notice function of a patent and its prosecution history requires that a patentee be held

to what he declares during the prosecution of his patent. *Springs Window Fashions LP v. Novo

Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003). Further, prosecution history prevents a patentee

from stating during prosecution that the claims do not cover a particular device and then later

changing his position by suing a party who makes that same device for infringement. *Springs

Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003). More simply,

"prosecution history limits the interpretation of claims so as to exclude any interpretation that

may have been disclaimed or disavowed during prosecution in order to obtain claim allowance."

*Standard Oil Co. v. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985).

The doctrine of prosecution disclaimer "is well established in Supreme Court precedent",

in which it precludes a patentee from recapturing through claim interpretation specific meanings

disclaimed during prosecution. *Omega Eng'g, Inc., v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed.

Cir. 2003). In order for prosecution disclaimer to attach, precedent requires that the alleged

disavowing actions or statements made during prosecution be both clear and unmistakable.

*Omega Eng'g, Inc., v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003); *Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008). However, the doctrine of prosecution disclaimer does not apply in a situation where the "disavowal of claim scope is ambiguous." *Omega Eng'g, Inc., v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) (emphasis added); *see also Serrano v. Telular Corp.*, 111 F.3d 1578, 1584 (Fed. Cir. 1997); *cf. Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998) (noting that "explicit statements made by a patent applicant during prosecution to distinguish a claimed invention over prior art *may* serve to narrow the scope of a claim") (emphasis added). For example, the Federal Circuit declined to apply the doctrine of disclaimer, as the court refused to limit the ordinary meaning of a claim, because the alleged disclaimer in the file wrapper was at best "inconclusive." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1347 (Fed.Cir.2001).

The doctrine of prosecution disclaimer narrows the ordinary meaning of a claim where the patentee has unequivocally disavowed a certain meaning to obtain a patent. For example, in *Rheox, Inc. v. Entact, Inc.*, the Federal Circuit ruled that the scope of the patent in suit did not cover "triple superphosphate"—an embodiment expressly disclosed in the written description— because the patentee cancelled a claim covering "triple superphosphate" and expressly disclaimed that compound in his arguments to the examiner to gain patent allowance. 276 F.3d 1319, 1325 (Fed. Cir. 2002).

The Federal Circuit balances the 'importance of public notice' with the 'right of patentees to seek broad patent coverage', and thus has "consistently rejected prosecution statements too vague or ambiguous to qualify as a disavowal of claim scope". *Omega Eng'g, Inc., v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003). *E.g., Schwing GmbH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324-25 (Fed. Cir. 2002) ("[P]rosecution history . . . cannot

be used to limit the scope of a claim unless the applicant took a position before the PTO that would lead a competitor to believe that the applicant had disavowed coverage of the relevant subject matter.").

The Court has considered Facebook's objections based on prosecution history and prior art and finds them to be without merit for purposes of this Claim Construction. The Magistrate Judge's construction is adopted and the objections are overruled.

### f.  "Term"

| Location | | Indacon Suggested Construction | Facebook Suggested Construction | Magistrate Judge's Construction | District Courts Construction |
|---|---|---|---|---|---|
| Patent '276 | Claim No. 1-4 & 8-11 | Textual or graphical object | Textual expression, such as a word | **Textual or graphical object** | **Textual expression, such as words** |
| Patent '043 | Claim No. 19&21 | | | | |

The Memorandum and Recommendation adopts the construction of the word "term" within the claims in the aforementioned location, similar to the proposed construction of Indacon.

For the reasons below, the Court finds that Facebook's objection to the construction of this term has merit and it should be sustained; the Magistrate Judge's construction of the word "term" is rejected. The Court finds that the word "term" shall be construed to mean a "textual expression, such as words."

Facebook objects to the Memorandum and Recommendation claiming that the proposed construction improperly broadens the meaning of the word 'term' when there is no basis to do

so, particularly, (1) the patent defines 'term' with only a textual implication rather than covering both text and graphics, and (2) the prosecution history does not broaden the word 'term' to encompass graphics.

Claim terms must be construed as they would be understood by a person of ordinary skill in the art to which the invention pertains. *Searfoss v. Pioneer Consol Corp.*, 374 F.3d 1142, 1149 (Fed. Cir. 2004). To ascertain the "ordinary and customary meaning" of a claimed term, "the court looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Phillips* at 1314. The words used in a claim are interpreted in light of the intrinsic evidence of record, which includes the written description, the drawings, and the prosecution history, of a patent. *Searfoss v. Pioneer Consol. Corp.*, 374 F.3d 1142, 1149 (Fed. Cir. 2004).

The word 'term' is defined and described in the specification of the patent as: "[t]he user makes an inquiry about specific *words or phrases* by entering those specific words or phrases via the search module. The search module first parses the inquiry into a list of its discrete terms, i.e., *words, number, spaces, ect.*, and then accessing the database index to locate the terms in various files/documents of selected databases." '276 Patent, col.12 ll.51-57. Particularly, the patent explains that the word 'term' is defined in the association of, "*words, number, spaces, etc.*". *Id.* Indacon argues that the use of 'etc' expresses that the list is non-exclusive and therefore cannot be limited to textual expressions only. It is true, that the use of the word abbreviation 'etc' indicates that the list is non-exclusive; however analysis should not end based on the applicants use of 'etc'. The words utilized by the patent to define 'term', deal only with textual entities and not graphical objects, ie – "*words, number, spaces*". Therefore, the word '*term*' should be defined based on its context, "*words, number, spaces, etc.*" The insertion of the non-exclusive

phrase '*etc*' appears to only elaborate on articles similar in nature, for example symbols or special characters, whereas a graphical object is outside the context of the patent as utilized in the patent.

Indacon also argues that the above passage, "*words, number, spaces, etc.*" relates only to FIG. 2 which is exemplary and therefore should not be used to limit the definition of 'term'. (docket no. 100 at 10)  Indacon asserts that their use of only textual descriptions are only exemplary embodiments and therefore cannot be used to narrow the meaning of the word 'term' in all contexts. (docket no. 100 at 10)  However, throughout the patent itself, the Court finds no other use of "term" to expand its definition beyond textual expressions or to incorporate graphical elements. *See*, '276 Patent col.11 ll.33-36 (". . . the user may define the terms 'grape', 'tomato', 'raspberry', etc., as aliases for a link term 'vine fruit'"); '276 Patent, fig. 11 (the repeated use of the word 'term' portrays solely a textual expression); '276 Patent col.11 ll.57-61 ("The search criterion may be according to any desired function or defined expression(s), such as a *single term, literal phrases or terms comprising text in quotes, multiple words and Boolean operators* (e.g. AND, OR, XOR, etc.), etc.") (emphasis added); '276 Patent col.12 ll.53-57 ("The search module 183 first parses the inquiry into a list of its discrete *terms, i.e., words, numbers, spaces, etc.*, and then accesses the database index 200 to locate the terms in various files/documents of selected databases.") (emphasis added); '276 Patent col.12 ll.58-65 ("In operation, the search module 183 first *compares each term* of the search query *against 'words' contained in a stop word list* 201 of the database index 200. The stop word list 201 is a file containing a list of 'noise words', or words that frequently occur in a file/document that do not contain distinguishable characteristics. For example, *stop words are 'words' such as 'and', 'as', 'the', 'a', 'I', 'for', certain punctuation, etc.*") (emphasis added); '276 Patent col.18 ll.41-47

("Thus, the word lists structure 214 is useful when a *search query includes terms* such as leading conflation searches, i.e., searches that call for all *words meeting a search criteria* in which only the last few letters of the search term are required to be met in the search query. For example, *a search for '*ample' creates a hit for the words 'sample', 'example', 'ample', etc.*") (emphasis added).

Indacon also relies on intrinsic evidence, in particular prior art, in arguing that some uses of the word 'term' throughout the patents include a graphical element such as: 'link term' or 'alias term.' Indacon asserts that the Hobbs reference explains that a 'link term' can and should refer to still pictures, moving pictures or graphics.

As stated before, the prosecution history of a patent often advises to the meaning of the claim language by demonstrating how the inventor understood the invention". *Phillips*, 415 F.3d at 1317. Indacon relies on the Hobbs reference where states:

> . . . the present invention concerns a multi-tier client/server model for record retrieval wherein optimum record retrieval from a database is achieved based on embedded expert judgments linked to words, phrases, sentences and paragraphs of text; or numbers; or maps, charts, and tables (*including spread sheet; or still pictures and/or graphics; or moving pictures and/or graphics; or audio elements (hereinafter sometimes collectively referred to as the "links" or "Linked Terms," or when any one of the aforementioned elements are used singly, as the "link" or "Linked Term"*).

U.S. Patent No. 5,987,454 Col.1 ll.13-24 (filed June 9, 1997) (emphasis added). Indacon uses the Hobbs patent to portray that "linked terms" contained both graphical and textual objects according to one of ordinary skill in the art. However, the patents at issue lack any indication that Indacon adopted the definition as used in the Hobbs Patent. "[W]ords in patent claims are given their ordinary meaning in the usage of the field of the invention, unless the text of the patent makes clear that a word was used with a special meaning." *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1299 (Fed. Cir. 1999). Even though the Hobbs patent was discussed

during the prosecution of the patents, those communications did not include a definition of the word 'term.' Rather, Indacon defined the word 'term' in the context of textual expressions without indicating it could also include graphical objects. *Supra* (Section III(f)). Finally, the use of "links" or "linked terms" does not indicate the common understanding of a person skilled in the art.

Indacon also asserts (docket no. 100 at 11) that the word 'term' as used throughout the specification is modified by a verity of various words: "Search, Chosen, Alias, and Link", and those words should not be used in an analysis to limit the meaning of the word term.

Claim terms are typically given their "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). "The person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313. However, "[W]ords in patent claims are given their ordinary meaning in the usage of the field of the invention, unless the text of the patent makes clear that a word was used with a special meaning." *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1299 (Fed. Cir. 1999).

Even though, as Indacon argues, that 'Search Term' and 'Link Term' have different scopes, narrower and broader, respectively; it is irrelevant that the modifier changes the scope of the word 'term', as the word "term" is at issue, not its modifier, nor the word 'term' coupled with its modifier.

Indacon uses the Hobbs patent to argue that "linked terms" contained both graphical and textual objects according to one of ordinary skill in the art; however, it appears that Hobbs was

acting as his own lexicographer for the words 'link(s)' and 'link term(s)'.  The Hobbs patent described various items (including text and graphics) and referred to them as 'link(s)' and 'link term(s)', for the remainder of his patent.

Further, the Memorandum and Recommendation relates 'link terms' to 'hypertext links' to depict that the word term contains graphical elements.  If according to the Memorandum and Recommendation, 'hypertext links' (which is understood to contain graphics per the M&R) is more commonly referred to as 'link term,' the patent should have used the word 'hypertext links' rather than 'link term.'  Further, no being construed is the word 'term,' not 'link term' nor 'hypertext links'; therefore, to modify the word 'term' with the prefix 'link,' and then relate 'link term' to 'hypertext links' (to argue that the word term contains textual expressions and graphics) goes beyond the scope of the word 'term.'

Based on the prior references it appears that the word 'term' is to be construed as solely a textual expression.  Construing 'term' to include both words and graphical objects enlarges what the inventors conceived as their invention at time of issue.  The court adopts the interpretation proposed by Facebook.

g.  "Alias"

| Location | | Indacon Suggested Construction | Facebook Suggested Construction | Magistrate Judge's Construction | District Court's Construction |
|---|---|---|---|---|---|
| Patent '276 | Claim No. 1, 4, 8, 11 | **Textual or graphical hyperlink** that the user can define to serve as an alternative name or label | **Textual expression** that the user can define to serve as an alternative name or label | **Textual or graphical hyperlink that the user can define to serve as an alternative name or label** | **Textual expression that the user can define to serve as an alternative name or label** |

The Memorandum and Recommendation adopts the construction of the phrase *"alias"* within the claims in the aforementioned location, similar to the proposed construction of Indacon.

For similar reasons to those stated above, the Court sustains Facebook's objection to the construction of this term and rejects the Magistrate Judge's construction of the word "alias." The term "alias" shall be construed to mean a "textual expression that the user can define to serve as an alternative name or label."

Facebook objects to the Memorandum and Recommendation claiming that the Magistrate Judge's construction improperly broadens the meaning of the word 'alias' when there is no basis to do so, particularly, (1) an 'alias' is a specific kind of 'term', and thus, is a textual expression, and (2) an 'alias' is not a 'hyperlink.'

This construction of the term 'alias' is similar to the dispute concerning the word 'term,' in that both disputes concern whether the phrase should include both textual and graphical objects or hyperlink or whether their meaning is limited to textual expressions only.

Courts must interpret claims from the perspective of "how a person of ordinary skill in the art understands a claim term . . . in the context of the entire patent". *Philips* at 1313.  This frame of reference "is based on the well-settled understanding that inventors are typically persons skilled in the field of the invention and that patents are addressed to and intended to be read by others of skill in the pertinent art." *Id.*  Since claim interpretation is highly context-dependent, the person of ordinary skill in the art "is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field". *Id.* (quoting *Multiform Desiccants, Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998)).

Under the summary of inventions, the inventor lays the foundation of defining what an alias is:

> The link module enables association of any selected link term with any of the plurality of files in the selectable database. The link module may further enable at least one *alias* term to be defined for any selected link term to enable a link to be established between each *alias* term and any of the files in the database. Each of the files may further include one or more fields. The link module further enables field links to be defined between any two or more of the plurality of files. Such field links may be defined according to patterns, where the patterns may further be defined using wildcard characters that each replace one or more digits or characters.

'276 Patent, col.5, ll.62-67 – col.6, ll.1-6. (emphasis added).  Under the Link Module, the word 'alias' is used to define a term whereby creating a link between the *alias* term and any file within the database.  As defined supra (§III(f)), a '*term*' is a "Textual expression, such as words, symbols, or characters" (see this courts construction of the word 'term').  Therefore, based on the prior construction, 'alias,' which represents a term is limited to a textual expression only.

Additionally, throughout the patent, the word alias is further defined via examples supporting a construction of textual expressions.

> The link module 177 may further enable the user to define one or more *aliases* for each link term. For example, *the user may define the terms "grape", "tomato", "raspberry", etc., as aliases of a link term "vine fruit"*. Each alias is treated in a similar manner as its corresponding link term.
>
> . . .
>
> For example, a user may want to use aliases or synonyms so that "equine" is also linked when "horse" is the primary pattern

'276 Patent col.11 ll. 32-37, col.24 ll.46-48.  As portrayed by the two examples above, the patent utilizes the term '*alias*' in the context of textual expressions only.  An 'alias' is just a word, name, or symbol that serves as an alternative name or label representing a larger searchable category—but not a graphical object.

The next argument raised in construing the word 'alias' is whether an alias is a hyperlink. Facebook asserts that an 'alias' is not a hyperlink based on the claims of the '276 patent, whereas Indacon claims that 'alias' is a hyperlink supported the intrinsic evidence.

To ascertain the "ordinary and customary meaning" of a claim term, "the court looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Phillips*, at 1314.  The sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.*

Indacon relies on extrinsic evidence—in particular, a patent issued to De La Huerga—to argue that a hypertext link can be both textual and graphical: "One technique for using keywords has become common place on the global computer network known as the internet.  Stored on database/servers on the Internet are thousands of data records which contain references to still other data records in the form of *textual or graphic* 'hyperlinks.'" U.S. Patent No. 5,895,461 (De La Huerga) Col.2 ll.52-56 (filled 1996) (emphasis added).  Further, Indacon also relies on another source of extrinsic evidence, a patent issued by Borman, in arguing that hypertext link can be both textual and graphical:

> With a markup language such as HTML (*hypertext* markup language) both amateurs and professionals become authors and the footnotes on the printed page become the hypertext of the electronic page. What was a passive reference now becomes an accessible link to a related file. A markup language describes the structure of a file including headings, paragraphs, images and what are called hot-links. A *hot-link* displays at the user level as *text or graphic* and is processed for communication purposes as an URL. It is these hot-links which provide the interactive footnotes described above.

U.S. Patent No. 5,890,172 (Borman) Col.2 ll.33-43. (filled 1996) (emphasis added).  Under both the De La Huerga patent and the Borman patent, Indacon attempts to portray that an

'alias' functions as a hyperlink and that hyperlinks were known in the art to be both textual or graphical. Thereby arguing that an 'alias' is broader than the specification. The specification clearly shows the close relationship between an 'alias' and a 'term.' Therefore, since a term is limited to textual expressions only, the word 'alias' must also be construed to mean textual expressions only.

The court is persuaded that the term 'alias' should be construed to mean textual expressions only. Since an 'alias' was created for any 'link term', and 'term' was construed to be textual expressions only, the court adopts Facebook's proposed construction for the term 'alias.'

### h.   "Custom Link"

| Location | | Indacon Suggested Construction | Facebook Suggested Construction | Magistrate Judge's Construction | District Court's Construction |
|---|---|---|---|---|---|
| Patent '276 | Claim No. 1 - 4 | A link the user can define using a chosen term that allows **instances** of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user | A link the user can define using a chosen term that allows **each instance** of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, **without modifying the files** | **A link the user can define using a chosen term that allows each instance of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, without modifying _the original database_ files** | Adopt Magistrate Judge's construction |

See Section III(j), *Infra.*

### i. "Custom Linking Relationship"

| Location | | Indacon Suggested Construction | Facebook Suggested Construction | Magistrate Judge's Construction | District Court's Construction |
|---|---|---|---|---|---|
| Patent

'276 | Claim No.

8 - 11 | A linking relationship the user can define using a chosen term that allows **instances** of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user | A linking relationship the user can define using a chosen term that allows **each instance** of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, **without modifying the files** | **A linking relationship the user can define using a chosen term that allows each instance of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, without modifying the _original database_ files** | Adopt Magistrate Judge's construction |

See Section III(j), *Infra*.

### j. "Link Term"

| Location | | Indacon Suggested Construction | Facebook Suggested Construction | Magistrate Judge's Construction | District Court's Construction |
|---|---|---|---|---|---|
| Patent

'043 | Claim No.

19&21 | A term chosen by a user that can be displayed as a link to a file specified by the user in the plurality of files | A term chosen by a user that can be displayed as a link to a file specified by the user **whenever the user encounters the term** in the plurality of files | A term chosen by a user that can be displayed as a link to a file specified by the user **whenever the user encounters the term** in the plurality of files | Adopt Magistrate Judge's construction |

The Memorandum and Recommendation adopts the construction of the phrases "*Custom Link*", "*Custom Linking Relationship*" and "*link Term*" within the claims in the aforementioned location, similar to the construction proposed by Facebook.

The Magistrates construction of the phrases *Custom Link*" and "*Custom Linking Relationship*" and '*Link Term*' is adopted in its entirety.  The objections to the construction of these phrases are overruled for the reasons outlined below.

Both parties object to the Magistrate Judge's construction of these phrases.  Facebook contends that its proposed claim construction was clear and does not require the modification the Magistrate Judge made by changing "without modifying the files" to "without modifying the *original database* files" regarding the construction of both terms '*Custom Link*' and '*Custom Linking Relationship*.'  Facebook suggests that the construction the Magistrate Judge drafted creates confusion, and thus requests this court to modify the construction by replacing "...original database files", as construed by the Magistrate Judge, to either "the files" (as Facebook originally proposed) or "the plurality of files" (an alternative).

Indacon also objects to the aforementioned limitation on two grounds.  First, Indacon argues that the limitation of "each instance" as utilized in the Magistrate Judge's construction is an improper limitation.  Second, Indacon argues that the limitation of "without modifying the original database" in the construction of '*Custom Link*' is too narrow and not in line with the specification.

**"Instances" [Magistrates construction] v. "Each Instance" [Indacon suggested construction]**

Indacon argues that the Magistrates construction of 'custom link', 'custom linking relationship,' and 'link term' improperly incorporated a limitation of "each instance" into every asserted claim throughout the construction.  Indacon bases its argument on Doctrine of Claim

Differentiation, the preferred embodiment, and a wrongful interpretation of an admission Indacon made in its claim construction brief.

Indacon argues that the Magistrate Judge improperly found a limitation in dependent claim 22 and applied the limitation to independent claim 19 of the '043 patent, in violation of the doctrine of claim differentiation.

The doctrine of claim differentiation provides that "each claim in a patent is presumptively different in scope." *RF Del., Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1263 (Fed. Cir. 2003) (quoting *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001)). The doctrine is premised on "the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope." *Andersen Corp. v. Fiber Composites, LLC.*, 474 F.3d 1361, 1369 (Fed. Cir. 2007) (quoting *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999)). Claim differentiation gives rise to a rebuttable presumption for claim construction purposes, especially when comparing the scope of an independent claim in view of its dependent claims: "[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005).

Further, in *Marine Polymer Technologies, Inc. v. HemCon, Inc.*, the Federal Circuit stated that "claim differentiation is 'not a hard and fast rule and will be overcome by a contrary construction dictated by the written description or prosecution history.'" 672 F.3d 1350, 1359 (Fed. Cir. 2012) (quoting *Seachange Int'l, Inc. v. C–COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005)); see also *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991) ("Claim differentiation is a guide, not a rigid rule.").

Claim differentiation commonly refers to the situation where there is not a meaningful difference between an independent claim and its dependent claim, except for the presence of an added limitation in the dependent claim. Thus, in that situation, the presumption is especially strong that the independent claim is not restricted by the added limitation in the dependent claim. *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007). Thus, in those situations, construing the independent claim to share that limitation would render the dependent claim "superfluous." *Andersen*, 474 F.3d at 1369-70 (Fed. Cir. 2007).

However, the doctrine of claim differentiation can be trumped by other considerations; for instance, the doctrine cannot broaden claims beyond their correct scope. *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380-81 (Fed. Cir. 2006). "[T]he written description and prosecution history overcome any presumption arising from the doctrine of claim differentiation." *Andersen*, 474 F.3d at 1369-70 (quoting *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362 (Fed. Cir. 2000)).

Throughout the patent, Indacon cites no instance of a link term that cannot be displayed as a link when encountered in the files (docket no. 98 at 3), and the term cannot be construed broader than specification. *Irdeto Access, Inc. v. Ecgistar Satellite Corp*, 383 F.3d 1295, 1300 (Fed Cir. 2004). Thus, the term must be construed so that 'each instance' of the custom link can be displayed as a link whenever the user encounters the term—as the Magistrate Judge correctly ruled.

Indacon also argues that the Magistrate Judge improperly relied on the preferred embodiment to support the additional limitation of 'each instance' in the construction of 'custom link' terms. Indacon asserts that the magistrate improperly uses the description contained in the preferred embodiment to narrow the meaning of the term 'custom link' as found in the claims.

Regardless of what the Magistrate Judge relied on, the patents do not contemplate a broader meaning than described in the Memorandum and Recommendation.  It is true, as Indacon asserts, that broad claims should not be limited by the specification, however, the patents written description does not support a broader meaning.

For the aforementioned reasons, the court affirms the magistrates construction of "each instance" over "instances".

## "Without modifying the original database files"

Both parties argue and object to the magistrate's construction of the phrases 'Custom Link' and 'Custom Linking Relationship' regarding the ending phrase "…without modifying the original database files."  Facebook asserts that an ambiguity can arise, based on the Magistrate Judge's construction, if Indacon attempts to argue that the 'original database files' can refer to files other than the files expressly referenced in the perspective claims (docket 91 at 6).  Indacon, on the other hand, asserts that the ambiguity is not as Facebook proposes, but rather that the limitation "…without modifying…" is contrary to the intent of the patent.

Facebook requests that this court to modify the construction by replacing ". . . the original database files," as construed by the Magistrate, to either "the files" (as Facebook originally proposed—andwhich Facebook asserts is clear in the context of the claim language) or "the plurality of files."  Indacon disagrees, claiming that Facebook wants to narrow the claim even further than the Magistrate Judge's construction in order to fix an ambiguity that does not exist. Facebook's argument is premised on the premise that the phrase 'original database files' (even though that language does not appear in the claims) can and will create confusion if Indacon attempts to argue that the construction can refer to other than those expressed in the claim.

Facebook's assertion of a potential ambiguity has no basis as claims are to be construed with intention focusing on the relevant text, i.e. the claims. See, e.g., *Interactive Gift Express, Inc. v. CompuServe, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (citing 35 U.S.C. § 112 (2000)). ("In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to 'particularly point . . . out and distinctly claim. . . . [T]he subject matter which the patentee regards as his invention.'"). Further, in construing claim terms in view of the claims themselves ensures that the claims, rather than some other source, dictate the metes and bounds of the invention. See, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004) ("It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.' '")); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 336 U.S. 271, 277 (1949) ("We have frequently held that it is the claim which measures the grant to the patentee."). Even within a given claim, "the context in which a term is used in the asserted claim can be highly instructive." *Phillips*, 415 F.3d at 1314. Therefore, no ambiguity can exist since the term 'files' in the claims cannot refer to other files not expressly referenced within the claim language itself.

Indacon objects to the same limitation same limitation as Facebook ("without modifying the original database files"); however, Indacon is of the opinion that this limitation is improperly narrow. Indacon argues that "files can be modified once they have been added to the database, and further, that nothing precludes adding custom links to these files." Indacon bases its argument on both the specification which "suggests that the files do not necessarily need to be modified i.e., converted to a different format, to be included in the database," (docket no. 93 at 11). Indacon's argument is premised on the Summery of Invention which states, "[t]he system

and method *may* automatically unambiguously, and accurately place reference links *among* documents within a database it creates according to a schema controlled by the user." '276 Patent at col.6, ll.32-35 (emphasis added).

Facebook counters that further in the Summary of Invention (particularly the same paragraph of the above quote), the patent states "The system and method does *not modify* or make extraneous copies of the contents of the original database files, objects, or documents." '276 Patent at col.6, ll.38-41 (emphasis added).  Here, the patent stresses that the system as a whole does not modify database files (not certain embodiments), just as placing links among the documents does not modify said documents.  Facebook also relies on the prosecution history to emphasize that the 'custom links' do not modify the files in the database.  For example, during prosecution of the '276 patent, Indacon asserts that it's "system creates a virtual custom links for the original source files.   The custom links are not inserted into the original source files themselves" (docket 41 at 19, citing Mead Decl. Ex. 16 (07/07/03 Amendment and Remarks) at 34).  Indacon argued to the USPTO that the original source files were not modified and the invention relies on a separate index to keep track of the custom links.  Therefore, in reviewing the prosecution history, Indacon asserted that the custom links do not modify the files in the database.   However, as the Magistrate Judge indicated in the Memorandum and Recommendation (docket no. 80 at 27-28), the statement Facebook relies on was made in relation to the preferred embodiment and thus should not be used to limit a claim.  See *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143, 1151-52  (Fed. Cir. 2003) (broad claims supported by the written description should not be limited to the preferred embodiment).  The mere fact of a particular embodiment being taught (or even "preferred") is generally not sufficient to justify limiting otherwise broad claim scope to the particular embodiment taught.

*See, e.g., Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 807–08 (Fed. Cir. 2007) (finding that a claimed "transverse" hole in a bone nail was not limited to the particular "perpendicular" orientation shown in the specification); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1306-1307 (Fed. Cir. 2006) (finding that a claimed "geometry" of orthodontic teeth was not limited to the geometries of orthodontics shown in the specification); *Agfa Corp. v. Creo Prods., Inc.*, 451 F.3d 1366, 1375–76 (Fed. Cir. 2006) (finding that a claimed "stack" of printing plates was not limited to the particular horizontal stack shown in the specification).

Further in the patent, Indacon maintains the view that files, objects or documents can be modified once in the database as "the database (i.e. the index) will be regenerated, or an error message will be presented" altering the user to the change.  '276 Patent at col.6, ll.41-46. Indacon admitted that the specification does suggest that the files do not necessarily need to be modified, i.e. converted to a different format, to be included in the database. (docket no. 100 at 5).  Therefore some modification is allowed.  The Magistrate Judge stated in his Memorandum and Recommendation (docket no. 80 at 27) "that the specification distinguishes between 'original' database files, and 'data sources' where the former is not modified by the system, and the later can be modified by a user."  Therefore, this Court adopts the construction of the Magistrate Judge as to the construction of the phrases '*Custom Link*' and '*Custom Linking Relationship*' regarding the limitation "without modifying the original database files."

### "Link Terms"

Indacon objects to the Magistrate judge's construction of this term.  However, no arguments regarding this construction were proffered by either party.  Therefore, the Magistrates construction is adopted in its entirety.

For the aforementioned reasons, the court adopts the magistrates construction of "*Custom Link*" "*Custom Linking Relationship*" and '*Link Term*' and the objections to the construction of each term are overruled.

**k.  "Custom Annotation"**

| Location | | Indacon Suggested Construction | Facebook Suggested Construction | Magistrate Judge's Construction | District Court's Construction |
|---|---|---|---|---|---|
| Patent | Claim No. | Notes specified by the user | Notes specified by users **that do not modify any of the** <u>selected</u> **files** | **Notes specified by users that do not modify any of the** <u>original</u> **database files** | Adopt Magistrate Judge's construction |
| '043 | 19&21 | | | | |

See Section III(k), *Infra*.

**l.   "Incorporating any user generated custom annotations into the index"**

| Location | | Indacon Suggested Construction | Facebook Suggested Construction | Magistrate Judge's Construction | District Court's Construction |
|---|---|---|---|---|---|
| Patent | Claim No. | If users have generated custom annotations, incorporating those annotations into the index | If users have generated custom annotations, incorporating those annotations into the index **without modifying any of the** <u>selected</u> **files** | **If users have generated custom annotations, incorporating those annotations into the index without modifying any of the** <u>original</u> **database files** | Adopt Magistrate Judge's construction |
| '043 | 19&21 | | | | |

The Memorandum and Recommendation (docket no. 80) adopts the construction of the phrases "*Custom Annotation*" and "*Incorporating any user generated custom annotations into the index*" similar to the construction proposed by Facebook.

The Magistrates construction of the phrases "*Custom Annotation*" and "*Incorporating any user generated custom annotations into the index*" is adopted in its entirety.

The objections and arguments proffered by both parties are identical to the arguments the parties assert *supra* in sections III(h, i, and j) ("*Custom Link*" "*Custom Linking Relationship*" and "*link Term*") under the heading "*Without modifying the original database files*," except for one argument Facebook makes regarding prosecution history of the patent.  Facebook argues that the construction creates an unnecessary confusion whereas Indacon objects to the construction arguing that it is too narrow.

Even though the same arguments are made (for sections III(h–l) the Magistrate's construction could create an ambiguity), here, Facebook relies on a different segment of the prosecution history as the basis  its argument concerning the terms at issue ("*Custom Annotation*" and "*Incorporating any user generated custom annotations into the index*").  Again, Facebook asserts that that the use of the term "original database files" could create an unnecessary confusion, as claims 19 sand 21 in the '043 patent refer only to "selected source files."  Facebook relies on part of prosecution history, in particular an Appeal Brief, where Facebook asserts that Indacon disclaimed any and all modification of the selected files. Facebook relies on an appeal brief in which Indacon stated during prosecution that's its claimed invention "stor[es] the user-generated annotations in the searchable index, as opposed to simply storing the annotation within the annotated files themselves."  (docket no. 91 at 7, quoting docket no. 41, exh. 31 (04-15-09 Appeal Brief at 33).  The Magistrate Judge correctly stated that the prosecution history cited by Facebook is not a complete disclaimer or surrender of a claim that 'Custom Annotations' could not be added to files.  In order for disclaimer to attach, the alleged disavowing actions or statements made during prosecution must be both clear and unmistakable.

*Omega Eng'g, Inc., v. Raytek Corp.,* 334 F.3d 1314, 1325-26 (Fed. Cir. 2003); *Cordis Corp. v. Medtronic Ave, Inc.,* 511 F.3d 1157, 1177 (Fed. Cir. 2008)

As discussed above, the specification discusses some modification to files, but that modification does not apply to the terms '*Custom Annotations*' or '*Custom Links*'. The Magistrate Judge stated in his Memorandum and Recommendation "the specification distinguishes between 'original' database files, and 'data sources' where the former is not modified by the system, and the later can be modified by a user." This Court agrees.

Therefore, for the aforementioned reasons coupled with the reasons located in section III (h-j) the Magistrate Judge's construction is adopted in its entirety and the parties' objections to the construction of these phrases are overruled.

IV.   **Terms Not Construed**

The parties agree on two claim constructions by the Magistrate Judge.

a.   **"Display and/or Displaying"**

b.   **"Accurately high-lighting the located terms and phrases"**

As neither party submitted objections and/or arguments for the aforementioned terms, the court adopts the Magistrate Judges construction of these phrases.

V.   **Conclusion**

Having considered all of the papers on file in this case, and having specifically considered the objections of the parties to Magistrate Judge's Memorandum and Recommendation, for the forgoing reasons, it is ORDERED that the United States Magistrate Judge's Memorandum and Recommendation is ACCEPTED IN PART and REJECTED IN PART pursuant to 28 U.S.C. § 636(b)(1) as described in this order and as summarized in the

chart attached to this order as Addendum A.  All objections not expressly sustained are hereby

DENIED.  This order shall serve as the claim construction for this case moving forward.

IT IS SO ORDERD.

SIGNED this _____ day of _____, 2013.


United States District Judge Orlando L. Garcia

Addendum A

| Claim Term / Phrase / Clause | Indacon Suggested Construction | Facebook Suggested Construction | Magistrate Judge's Construction | W.D. of T.X. Construction |
|---|---|---|---|---|
| "File" | Any digital object that contains machine or individual readable or searchable information, including composite files comprised of multiple elements stored in separate files. | A document or digital object, **other than a database**, that contains machine or individual readable or searchable information | **Any digital object that contains machine or individual readable or searchable information, including a composite file comprised of multiple elements stored in separate files.** | Adopt Magistrate Judge's construction |
| "Selectable Database" | One of More databases comprising files selected by a user | A database that includes **one or more distinct** databases selected by the user containing one or more files selected by the user | **A database that includes one or more databases selected by the user containing one or more files selected by the user** | Adopt Magistrate Judge's construction |
| "Database Selection Module" | Any combination of hardware and software implemented to enable a user to select files for inclusion in to a selectable database | No construction offered | **Any combination of hardware and software implemented to enable a user to select files for inclusion in to a selectable database** | Adopt Magistrate Judge's construction |

39

| Claim Term / Phrase / Clause | Indacon Suggested Construction | Facebook Suggested Construction | Magistrate Judge's Construction | W.D. of T.X. Construction |
|---|---|---|---|---|
| "Enables selection of a plurality of files for inclusion into at least one selectable database" | Allows the user to choose multiple files to be included into at least one selectable database, either by copying files into local storage or maintaining a link to files of interest | Allows the user to choose multiple files to be captured and deposited into a selectable database as opposed to accessing and retrieving data from other databases | Allows the user to choose multiple files to be included into at least one selectable database, either by copying files into local storage or maintaining a link o files of interest | Adopt Magistrate Judge's construction |
| "Selecting a plurality of the located files… for automatic inclusion into at least one selectable database" | Choosing multiple files to be automatically included into at least one selectable database, either by copying files into local storage or maintaining a link to files of interest | Choosing multiple files to be automatically captured and deposited into a distinct selectable database, as opposed to accessing and retrieving data from another database | Choosing Multiple files to be automatically included into at least one selectable database, either by copying files into local storage or maintaining a link to files of interest | Adopt Magistrate Judge's construction |
| "Term" | Textual or graphical object | Textual expression, such as a word | Textual or graphical object | Textual expression, such as words |
| "Alias" | Textual or graphical hyperlink that the user can define to serve as an alternative name or label | Textual expression that the user can define to serve as an alternative name or label | Textual or graphical hyperlink that the user can define to serve as an alternative name or label | Textual expression that the user can define to serve as an alternative name or label |

| Claim Term / Phrase / Clause | Indacon Suggested Construction | Facebook Suggested Construction | Magistrate Judge's Construction | W.D. of T.X. Construction |
|---|---|---|---|---|
| **"Custom Link"** | A link the user can define using a chosen term that allows **instances** of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user | A link the user can define using a chosen term that allows **each instance of** the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, **without modifying the files** | **A link the user can define using a chosen term that allows each instance of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, without modifying the original database files** | Adopt Magistrate Judge's construction |
| **"Custom Linking Relationship"** | A linking relationship the user can define using a chosen term that allows **instances** of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user | A linking relationship the user can define using a chosen term that allows **each instance of** the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, **without modifying the files** | **A linking relationship the user can define using a chosen term that allows each instance of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, without modifying the original database files** | Adopt Magistrate Judge's construction |
| **"Link Term"** | A term chosen by a user that can be displayed as a link to a file specified by the user in the plurality of files | A term chosen by a user that can be displayed as a link to a file specified by the user **whenever the user encounters the term** in the plurality of files | **A term chosen by a user that can be displayed as a link to a file specified by the user whenever the user encounters the term in the plurality of files** | Adopt Magistrate Judge's construction |

| Claim Term / Phrase / Clause | Indacon Suggested Construction | Facebook Suggested Construction | Magistrate Judge's Construction | W.D. of T.X. Construction |
|---|---|---|---|---|
| "Custom Annotation" | Notes specified by the user | Notes specified by users that do not modify any of the **selected** files | **Notes specified by users that do not modify any of the original database files** | Adopt Magistrate Judge's construction |
| "Incorporating any user generated custom annotations into the index" | If users have generated custom annotations, incorporating those annotations into the index | If users have generated custom annotations, incorporating those annotations into the index without modifying any of the **selected** files | **If users have generated custom annotations, incorporating those annotations into the index without modifying any of the original database files** | Adopt Magistrate Judge's construction |
| "Display and/or Displaying" | N/A | N/A | **To visually present to a computer user. Merely delivering information to a computer is not displaying information** | Adopt Magistrate Judge's construction |
| "Accurately high-lighting the located terms and phrases" | N/A | N/A | **Visually presenting to the user the located terms and phrases so they are visually distinguished from surrounding text appearing on the screen** | Adopt Magistrate Judge's construction |

42